[No. F017753. Fifth Dist. Apr. 19, 1994.]

BROWN & BRYANT, INC., Plaintiff and Appellant, v.
HARTFORD ACCIDENT & INDEMNITY COMPANY et al., Defendants
and Respondents.

## COUNSEL

Byrum, Holland & Griffin and David R. Griffin for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Paul J. O'Rourke, Jr., Hager, Trippel & Macy, Harry E. Macy, Robinson & Wood, Weldon S. Wood, Rivkin, Radler & Kremer, Glenn A. Friedman and Anthony Gambardella for Defendants and Respondents.

## OPINION

**BUCKLEY, J.**—Brown & Bryant, Inc. (Brown & Bryant), appeals from a judgment dismissing its action against Hartford Accident & Indemnity Company, Fireman's Fund Insurance Companies, and United States Fidelity & Guaranty Company (collectively Insurers) for failure to bring the action to trial within five years. (Code Civ. Proc., §§ 583.310, 583.360.)[1] It contends the five-year period was tolled during the time a settlement agreement between the parties was in effect. We agree and will reverse.

### FACTUAL AND PROCEDURAL HISTORY

On May 27, 1986, Brown & Bryant filed a complaint against Insurers and others[2] seeking damages for breach of contract, breach of the covenant of good faith and fair dealing, violation of the Insurance Code, fraud, interference with prospective advantage, and conspiracy. According to the complaint, Brown & Bryant operated facilities in the Kern County communities of Shafter and Arvin where it repackaged, formulated and distributed agricultural chemicals. In 1985, the Department of Health Services (DHS) ordered Brown & Bryant to clean up extensive soil contamination discovered at the two sites. Brown & Bryant made claims for its cleanup costs to the various insurance companies which had provided it with liability

---

[1] All further statutory references are to the Code of Civil Procedure unless indicated otherwise.

[2] The remaining defendants were Reserve Insurance Company, Holland-America Insurance Company, Royal Insurance Company, and Does 1 through 50.

coverage during the period the two facilities were in operation. The companies denied coverage and refused to pay the claims.

In May 1988, Brown & Bryant and the insurance companies executed a written "Settlement Agreement and Release."[3] Brown & Bryant agreed to dismiss its complaint with prejudice and release the companies from any past, present, or future claims arising from the environmental contamination. The companies, in turn, collectively agreed to pay $3,260,000 million to DHS or its designee upon delivery of documents releasing Brown & Bryant from any further claims by DHS, the California Water Resources Control Board, the State Board of Equalization, the Kern County Health Department, and the United States Environmental Protection Agency (EPA). In addition, the agreement provided:

"24. As separately agreed among the parties, all litigation shall be suspended for a period of 30 days from March 31, 1988.

". . . . . . . . . . . . . . . . . . . . . . .

"26. In the event that the releases [from the various administrative agencies] . . . are not obtained within 30 days from the execution of this agreement by all signatories, this agreement shall be null and void unless otherwise extended in writing by all signatories hereto."

Over the next two months, the appropriate releases (each denominated a "Covenant Not to Sue") were obtained from all the named agencies except for the EPA.[4] The insurance companies granted Brown & Bryant a series of written extensions through June 2, 1989, to permit it to obtain the EPA release.[5] Thereafter, notwithstanding the apparent expiration of the settlement agreement, the parties continued discussions among themselves and with EPA.[6]

---

[3]The agreement was made between Brown & Bryant and John H. Brown, on the one hand, and the three respondents as well as Royal Insurance Company, and California Compensation and Fire Company, on the other hand. The parties signed the agreement on different dates between April 11 and May 19, 1988.

[4]The record includes releases from the County of Kern, the Regional Water Quality Control Board, and DHS signed on July 11, and June 19, 1988, respectively. While the record does not include a release from the State Board of Equalization, there is no contention any release other than that from the EPA was lacking.

[5]Again, while the record contains most but not all the relevant documents, the parties do not dispute the settlement agreement was extended through June 2, 1989.

[6]On June 22, 1989, representatives of Brown & Bryant and the insurance companies attended a meeting in San Francisco with representatives of the EPA and the Department of Justice to discuss the terms of the release. The record also contains letters to Brown & Bryant from some of the companies during the remainder of 1989 inquiring about the status of the

Insurers filed a motion to dismiss the action in June 1991.[7] The trial court heard the motion on July 9 and subsequently granted a continuance to permit Brown & Bryant to "produce further evidence regarding the claimed settlement." Brown & Bryant submitted additional pleadings[8] and declarations on August 16, but did not appear at a hearing held on that date at which the court granted the motion to dismiss. Thereupon Brown & Bryant filed a motion for reconsideration of the court's order. The court granted the motion for reconsideration and took the motion to dismiss under submission. Later, it again granted the motion to dismiss. The court's minutes explain its ruling as follows: "[¶] The settlement agreement expired on June 2, 1989 by its own terms. [¶] The impossibility, impracticalbility [sic] or futility of performing a settlement agreement is not such as to toll the five year period."

## DISCUSSION

"An action shall be brought to trial within five years after the action is commenced against the defendant." (§ 583.310.) An action which is not brought within the prescribed period must be dismissed. (§ 583.360, subd. (a).) These requirements are mandatory "and are not subject to extension, excuse, or exception except as expressly provided by statute." (§ 583.360, subd. (b).) "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: . . . [¶] (c) Bringing the action to trial . . . was impossible, impracticable, or futile." (§ 583.340.)

■ What is impossible, impracticable, or futile is determined in light of all the circumstances of a particular case, including the conduct of the parties and the nature of the proceedings. The critical factor is whether the plaintiff exercised reasonable diligence in prosecuting its case. (*Baccus* v. *Superior Court* (1989) 207 Cal.App.3d 1526, 1532 [255 Cal.Rptr. 781].) The statute must be liberally construed, consistent with the policy favoring trial on the merits. (*Ibid.*)

■ Generally, the determination whether prosecution of an action was impossible, impracticable, or futile is a matter within the trial court's

EPA release, and an "update" from Brown & Bryant to the companies dated February 12, 1990.

[7]United States Fidelity & Guaranty Company and Hartford filed motions to dismiss on June 19 and June 24, 1991, respectively, and Fireman's Fund joined the motions on July 2, 1991.

[8]As Hartford notes in its respondent's brief, Brown & Bryant did not assert the claims it makes in this appeal (tolling of the statutory dismissal period, estoppel to assert the dismissal statute) in its original opposition to the motion or at the July 9th hearing. It did, however, assert these claims in its supplemental pleadings and at a subsequent hearing on the motion.

discretion and will not be disturbed on appeal unless an abuse of discretion is shown. (*Hughes* v. *Kimble* (1992) 5 Cal.App.4th 59, 66-67 [6 Cal.Rptr.2d 616].) However, as the court noted in *Schiro* v. *Curci* (1990) 220 Cal.App.3d 840, 843 [269 Cal.Rptr. 639], the applicability of a statute is a question of law upon which the appellate court exercises its independent judgment. The *Schiro* court concluded, as a matter of law, that section 583.310 et seq. does not bar entry of judgment pursuant to section 664.6[9] according to the terms of a settlement agreement reached within five years after suit is commenced. (220 Cal.App.3d at p. 845.)

Likewise here, we are asked to determine whether a settlement agreement executed during the pendency of a lawsuit makes it impossible, impracticable, or futile to proceed to trial within the statutory time allotted. As it is presented, this is a legal question and not a factual one. It is not dependent upon the trial court's interpretation of facts, only upon the trial court's legal interpretation of the efficacy of the written settlement agreement. As such, we are not governed by the substantial evidence rule as argued by Insurers or the abuse of discretion standard mandated by *Hughes* v. *Kimble, supra,* 5 Cal.App.4th 59. Rather, we will exercise our independent judgment. (Cf. *Schiro* v. *Curci, supra,* 220 Cal.App.3d at p. 843.)

■ Brown & Bryant contends the five-year mandatory dismissal period was tolled while the settlement agreement was in effect because the agreement barred it from litigating the underlying lawsuit. Specifically, Brown & Bryant argues the five-year limitation: "must be tolled for that period of time during which plaintiff, by agreement with defendant, was barred from further prosecution of the action.

"Because the five year period of limitations was tolled during, at minimum, the 14 month period during which the settlement agreement was clearly in effect, the limitations period had not run from the start of this action on May 27, 1986 to June 19, 1991, when the defendants filed their motion to dismiss. Therefore, it was error for the trial court to dismiss this action . . . ." In addition, it argues Insurers' conduct thereafter induced it to believe the agreement remained in effect such that Insurers are estopped to contend otherwise.

*The Settlement Agreement.*

Several cases have considered the applicability of the mandatory dismissal statute in the situation where the parties have reached a settlement. A split of

---

[9]Section 664.6 provides: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

authority has resulted. *Gorman* v. *Holte* (1985) 164 Cal.App.3d 984 [211 Cal.Rptr. 34], *Schiro* v. *Curci, supra,* 220 Cal.App.3d 840 and *Malouf Bros.* v. *Dixon* (1991) 230 Cal.App.3d 280 [281 Cal.Rptr. 235] held the five-year statute ceases to apply once a final settlement has been reached. However, *Varwig* v. *Leider* (1985) 171 Cal.App.3d 312 [217 Cal.Rptr. 208] declined to follow *Gorman* and held the statute requires dismissal unless a party seeks to enforce the settlement within the five-year period.

In *Gorman* v. *Holte, supra,* 164 Cal.App.3d 984 the parties agreed to the terms of a stipulated judgment in open court within the five-year period, but were unable to agree on the language of an appropriate order before the period lapsed. The trial court granted the defendant's motion to dismiss under section 583, subdivision (b) (the predecessor to §§ 583.310 and 583.360). The appellate court reversed. It noted the oral agreement was legally enforceable and disposed of all the issues in dispute, making a trial unnecessary. Therefore, since the purpose of the statute is to prevent avoidable delay in bringing an action to *trial*, the agreement rendered the five-year limit "legally irrelevant." (164 Cal.App.3d at p. 987.) A contrary result "would be counter to the well-established and long-supported public policy of encouraging pretrial settlements. [Citations.] Section 583 applies exclusively to disputes which can and will be resolved only by trial." (*Id.* at p. 988.)

The First Appellate District reached a different conclusion in *Varwig* v. *Leider, supra,* 171 Cal.App.3d 312. There, the parties also agreed to the terms of a settlement within the five-year period. The agreement required the plaintiff to perform certain acts which he failed to complete before the period expired. The trial court thereupon granted the defendant's motion to dismiss, and the appellate court affirmed. The court concluded a settlement agreement does *not* finally dispose of the underlying lawsuit until judgment has been entered upon it; prior to that point the mandatory dismissal statute continues to apply. (*Id.* at p. 315.) It noted a dismissal would not prevent the parties from specifically enforcing the settlement agreement in a separate action, but acknowledged: "It is true that, if a separate lawsuit to enforce the agreement is filed, the purpose of encouraging settlement (e.g., to avoid the time and expense involved in a trial) will be defeated. The policies favoring settlement must, however, be balanced against the expressed desire of the Legislature to have litigation resolved in a reasonably expeditious manner. This purpose would be defeated if a lawsuit must remain pending before the trial court when the parties have reached a compromise agreement but have chosen not to enter judgment on it in a timely fashion." (171 Cal.App.3d at p. 316.)

In *Schiro* v. *Curci, supra*, 220 Cal.App.3d 840, the parties agreed to settle within the five-year period but did not sign the agreement until after the period had run. When the plaintiff failed to perform certain obligations under the agreement, the defendant moved the trial court to enter judgment on it pursuant to section 664.6. The plaintiff opposed the motion, arguing the trial court should have dismissed the action on its own motion pursuant to section 583.310 et seq. The trial court granted the defendant's motion, and the appellate court affirmed. After reviewing *Gorman* and *Varwig*, the court concluded *Gorman*: "enunciates the better rule. In view of the policy of the law highly favoring settlements [citation], we think the fact a settlement is finally executed after the five-year period has run is immaterial. . . . [¶] We think a specific exception enunciated in section 583.340, subdivision (c) applies; during the time between the agreement to settle and the final execution of the settlement agreement by all the interested parties, it would have been 'futile' to bring the action to trial because all the issues had been resolved through settlement." (220 Cal.App.3d at pp. 844-845.)

Finally, in *Malouf Bros.* v. *Dixon, supra*, 230 Cal.App.3d 280, the parties agreed to the terms of a settlement in open court but each subsequently questioned the other's performance. More than five years after filing suit, the plaintiff moved to enforce the settlement pursuant to section 664.6. The trial court granted the motion and the defendant appealed, contending the trial court should have dismissed the action for the plaintiff's failure to enforce the agreement within the five-year dismissal period. The appellate court affirmed, also choosing to follow *Gorman*.

"Once the parties have stated a complete settlement in open court, the court can assume the matter has indeed been finally disposed. Details of execution may remain, but it is reasonable to assume the matter will not go to trial. If a dispute about the settlement develops, it can be resolved through the streamlined procedure of . . . section 664.6. [¶] The *Varwig* view might prevent settlements on the eve of trial shortly before the five-year deadline or settlements which enable the defendant to avoid a court judgment. The law should encourage the avoidance of needless trials. As in *Gorman* and *Schiro*, we see no compelling reason why a settlement agreement must be reduced to judgment within a five-year period." (230 Cal.App.3d at p. 285.)

Thus, these cases agree a timely and enforceable settlement agreement which finally disposes of all issues in the underlying lawsuit renders section 583.310 et seq. "legally irrelevant." They differ only on whether the agreement, in order to finally dispose of the issues, must first be reduced to a judgment. On this question, the reasoning in *Gorman*, *Schiro*, and *Malouf*

*Bros.* is the more persuasive. As the court noted in *Gorman,* an enforceable settlement agreement "has the attributes of a judgment in that it is decisive of the rights of the parties and serves to bar reopening of the issues settled. Absent a fundamental defect in the agreement itself the terms are binding on the parties. [Citations.]" (*Gorman* v. *Holte, supra,* 164 Cal.App.3d at p. 988.) No useful purpose is served by requiring the parties, within the five-year mandatory dismissal period, to take the additional step of enforcing the agreement pursuant to section 664.6.

The concern expressed in *Varwig* that this rule would defeat the purpose of the mandatory dismissal statute to resolve litigation in an expeditious manner is unfounded. Indeed, the contrary rule adopted in *Varwig* would be more likely to create additional litigation by encouraging a plaintiff to continue prosecuting the underlying lawsuit until a settlement agreement is fully realized, or by forcing the parties to bring a separate action to specifically enforce the agreement after the five-year dismissal period has passed. Further, the *Varwig* view would discourage settlement negotiations toward the end of the five-year period, frustrating the policy strongly favoring pretrial settlements.

In fact, *Schiro* is directly analogous to the instant case. The only new twist presented here is that the agreement was enforceable only during a limited 14-month period. Insurers concede that "written extensions" modifying the settlement agreement were granted extending the agreement "through June 2, 1989." The agreement became null and void after the last written extension of time expired. However, during the period covered by the extensions, the parties were bound by the terms of the settlement agreement. *Malouf Bros., Schiro* and *Gorman* are applicable to this limited time period.

Insurers argue, in essence, that their settlement agreement with Brown & Bryant, unlike the settlements in the cases cited above, did not finally dispose of all issues in the underlying lawsuit because the agreement expired by its own terms without all conditions precedent to Insurers' performance having been met. They argue, for example, that the agreement was never "consummated" and refer to it several times as "negotiations."[10] However, there is no real dispute that a binding agreement existed between the parties

---

[10]At oral argument and in their briefing letter which followed, Insurers attempt to portray the settlement agreement as simply a stipulation between the parties.

Generally, a stipulation made during the pendency of a case which may delay the time for trial does not toll the running of section 583.310 unless the stipulation expressly extends the mandatory dismissal period. (§ 583.330; *Anderson* v. *Erwyn* (1966) 247 Cal.App.2d 503, 505 [55 Cal.Rptr. 634] [a stipulation to take a matter off calendar is not sufficient by itself to extend the section 583.310 time period].) However, we perceive a significant distinction

from May 19, 1988, until June 2, 1989; if the EPA had provided the requested release within that period, Insurers clearly would have been obligated to perform their part of the settlement. In this respect, the settlement agreement here was no different from those in *Schiro* and *Malouf Bros.* which were also contingent upon performance of certain obligations by one or both parties. Once the parties reach an enforceable agreement, "the court can assume the matter has indeed been finally disposed. Details of execution may remain, but it is reasonable to assume the matter will not go to trial." (*Malouf Bros.* v. *Dixon, supra*, 230 Cal.App.3d at p. 285.)

We disagree with Insurers' assertion that because the settlement agreement required releases from named third parties, one of which was never obtained, the agreement was unenforceable as between the parties. An executory contract is, nevertheless, a binding and enforceable agreement. (Cf. *Mamula* v. *McCulloch* (1969) 275 Cal.App.2d 184, 193 [79 Cal.Rptr. 571].) This same distinction, that of third party action required, is also urged as a fact distinguishing this case from the cases cited above, upon which we rely. Again, we disagree. The salient factor is not what ultimately did, or did not, happen. Rather, it is whether during the period covered by the agreement, Brown & Bryant would have been acting in bad faith and in violation of the spirit of the agreement by proceeding with the prosecution of the action.

Insurers also argue Brown & Bryant failed to exercise reasonable diligence in prosecuting the case because it failed to obtain a stipulation from Insurers tolling the five-year dismissal statute while the settlement agreement was in effect, and because it failed to move the case to trial in the two-year period after the agreement expired but before the five-year period lapsed.

However, the argument that Brown & Bryant had two years after the agreement expired to bring the matter to trial but failed to do so appears to confuse the five-year mandatory dismissal statute (absent tolling) with the discretionary delay in prosecution dismissal pursuant to section 583.410 et

---

between stipulations which extend time to answer (*Waxman* v. *Boren, Elperin, Howard & Sloan* (1990) 221 Cal.App.3d 519, 524-525 [270 Cal.Rptr. 540]), permit the filing of an amended complaint (*Rosefield Packing Co.* v. *Superior Court* (1935) 4 Cal.2d 120, 124 [47 P.2d 716]), or postpone a pretrial conference to a date beyond the five-year period (*J. C. Penney Co.* v. *Superior Court* (1959) 52 Cal.2d 666, 670-671 [343 P.2d 919]), and a "Settlement Agreement and Release" clearly intended by the parties to resolve the underlying action without trial.

To paraphrase a common aphorism: If it looks like a settlement agreement, talks like a settlement agreement, acts like a settlement agreement and is entitled a settlement agreement, it must be a settlement agreement.

seq. There was no motion made for discretionary dismissal under section 583.410.[11] And even if a reasonable time remained to bring the case to trial after expiration of the agreement, the five-year period is nevertheless tolled for the period the agreement was in effect. (*Rose* v. *Scott* (1991) 233 Cal.App.3d 537, 542 [284 Cal.Rptr. 487]; *Sierra Nevada Memorial-Miners Hospital, Inc.* v. *Superior Court* (1990) 217 Cal.App.3d 464, 470 [266 Cal.Rptr. 50].)

Further, if Insurers were concerned about the delay in obtaining the EPA release, they could have declined to grant any of several extensions to the settlement agreement. The parties plainly contemplated a time limit for performance of its terms.

Finally, it should be noted the trial court granted the motion to dismiss the case because "The impossibility, impracticalbility [*sic*] or futility of performing a settlement agreement is not such as to toll the five year period." The correct test, however, is whether it was impossible, impracticable, or futile to bring the case *to trial*.[12] Because the statute was tolled for 14 months, the 5-year period had not expired. Therefore, as a matter of law, the trial court erred by granting judgment pursuant to section 583.360, subdivision (a).[13]

## DISPOSITION

The judgment is reversed. Costs are awarded to Brown & Bryant.

Ardaiz, Acting P. J., and Harris, J., concurred.

A petition for a rehearing was denied May 13, 1994, and respondents' petition for review by the Supreme Court was denied July 21, 1994. Baxter, J., was of the opinion that the petition should be granted.

[11]Our reference to section 583.410 et seq. in no way implies that such a motion would have been successful.

[12]Hence, contrary to Insurers' assertion on appeal, it is irrelevant whether substantial evidence supports the trial court's determination that the settlement agreement could not be performed during the preceding five-year period.

[13]We reject the second argument of Brown & Bryant that the court erred by failing to find Insurers were estopped to move for dismissal by *their conduct after the agreement expired.* (See, e.g., fn. 6, *ante.*) Because determination of whether estoppel should be applied is reached by logical reasoning from evidence presented at the hearing and not solely by application of legal principles, we apply the substantial evidence test to resolve this issue. (Cf. *Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3 [139 Cal.Rptr. 700, 566 P.2d 602].) Review of the record reveals substantial evidence supporting the court's implied finding that Insurers were not estopped to move for dismissal.