[No. A082950. First Dist., Div. Five. Jan. 13, 2000.]

CANAL STREET, LTD., et al., Plaintiffs and Appellants, v.
ROBERT A. SORICH, as Personal Representative, etc., et al., Defendants
and Respondents.

**[Opinion certified for partial publication.[1]]**

_____

[1]Pursuant to *California Rules of Court,* rules 976(b) and 976.1, parts II and III of this
opinion are not certified for publication.

**COUNSEL**

Reed, Elliott, Creech & Roth, Jeffrey S. Lawson and Lauren Berger for Plaintiffs and Appellants.

John J. Hartford and Alan M. Phillips for Defendants and Respondents.

## OPINION

**HANING, J.**—Plaintiffs and appellants Canal Street, Ltd., and Victor Catanzaro, individually and as general partner, appeal an order of dismissal for failing to bring their action against defendants and respondents Robert A. Sorich, William J. Sorich and Rose E. Sorich to trial within five years. (Code Civ. Proc., § 583.310.) Appellants contend a binding settlement agreement between the parties had concluded the action, rendering the five-year statute moot.[2]

### BACKGROUND

In 1980 appellants purchased a parcel of property in South San Francisco from respondents. In addition to his status as general partner of the purchaser, Catanzaro also acted as respondents' real estate broker in the transaction. The property contained two underground storage tanks that had been installed and used by respondents and their tenants. In 1989 appellants removed the tanks under the direction of the San Mateo County Health Services Agency (Agency), and during the removal process learned the tanks had leaked and the property was contaminated with petroleum hydrocarbons.

On August 4, 1992, appellants brought an action against respondents for damages appellants incurred in cleaning up the contamination. At the same time they applied to the Underground Storage Tank Cleanup Fund (Fund), administered by the State Water Resources Control Board, for reimbursement of their cleanup costs. When the action commenced appellants were represented by George Benetatos and respondents by Alan Phillips. In July 1994, John Hartford substituted in as counsel for A.W. Sorich, and Alan Phillips continued to represent Rose Sorich. In November 1994 each respondent cross-complained against Catanzaro for indemnification and breach of his duty to represent them fairly as their broker in the sale of the property.

On November 26, 1996, two weeks before the scheduled trial date, the case settled during a judicially mandated settlement conference. As recited for the record by Benetatos, respondents agreed to pay appellants a total of $400,000: "$250,000 shall be paid within 30 days of receipt of final approval of the [Fund], that [it] will not seek reimbursement of remediation costs from any of the settlement proceeds," with a daily penalty of $1,000 if not timely paid. Appellants concurred with Hartford's specification that "[t]he

---

[2]The original defendants were A.W. Sorich and his wife, Rose E. Sorich. A.W. Sorich died while the action was pending. Their sons, Robert A. Sorich and William J. Sorich, are now defendants and respondents in their capacity as the personal representatives of their late father.

Mollie Catanzaro, Victor Catanzaro's wife, was also a plaintiff, but she is not a party to this appeal.

burden of clearing the settlement with the appropriate authorities [was] a burden to be borne entirely by [appellants]."

Benetatos stated that the remaining $150,000 would be paid within five years or upon A.W. Sorich's death, whichever occurred first, with an annual interest rate of 10 percent, and secured by a first deed of trust on certain South San Francisco commercial property. There would be a preliminary title report on this property, with the condition of title subject to appellants' approval. Benetatos agreed with Phillips that if respondents prepaid the $150,000, there would be no prepayment penalty.

Benetatos also recited that the agreement would specifically state that the payment was to compensate appellants for lost income resulting from contamination, loss of profits from inability to develop the property, increased costs due to contamination, and attorney fees, that the parties agreed to dismiss their respective cases with prejudice, that mutual releases under Civil Code section 1542 would apply to the terms of the settlement agreement, and that appellants agreed to indemnify and hold respondents harmless from any future claims by the Fund concerning the property.

The parties agreed that appellants were responsible for a bill of approximately $9,000 that respondents had received from the Agency for overseeing remediation of the property. Observing that there would likely be multiple drafts of the agreement, Phillips requested that appellants begin the drafting process and send respondents the drafts for approval. Appellants agreed.

The court specifically asked the attorneys if it was correct they had "reached a settlement in this case after an all day settlement conference?" They all answered affirmatively. A.W. Sorich and Catanzaro also told the court that they heard and understood the terms of the agreement, were entering it willingly, and understood it to be a final settlement. When Phillips expressed concern that he wanted to be certain "that the record is clear, everyone is in agreement with this settlement and not just the parties present," Benetatos and Catanzaro stated they were authorized to settle on behalf of all plaintiffs. Phillips stated he had authority to settle on behalf of Rose Sorich, "who consents to this settlement in the manner and form provided." The scheduled trial date was vacated.

On December 13, 1996, Benetatos sent a draft of the settlement agreement to the Fund and asked for verification that it would not seek reimbursement from the settlement proceeds. He requested prompt attention because the settlement was contingent on the Fund's not seeking reimbursement from the settlement funds.

In February and March 1997, respectively, appellants discharged Benetatos and retained Richard Jacobs as their attorney.

On March 6, 1997, Jacobs sent respondents a proposed settlement agreement. Its payment terms mirrored those articulated on the record at the November 26, 1996, settlement conference, including the Fund approval condition.

On March 11, 1997, the Fund responded to Benetatos that it was inappropriate for it to comment on or approve draft agreements. The Fund, which had reimbursed appellants $107,988 to date, copied the letter to Hartford and Phillips.

Phillips and Jacobs corresponded in the ensuing months on acceptable language for the written settlement agreement. On April 30, 1997, Phillips informed Jacobs that respondents would pay the entire settlement in a lump sum, and that he was holding their $400,000 cashier's check in anticipation of a full settlement. He asked that the relevant portions of the March 6 draft agreement be changed accordingly.

On June 12, 1997, Jacobs sent Phillips a revised settlement agreement "to reflect all the points we discussed yesterday morning. I am very pleased that we have reached final agreement on the text." The revised agreement states that respondents will pay appellant a lump sum of $400,000 within 10 days after "after exchange of fully executed counterparts of the Agreement." It contains no provisions regarding Fund approval.

On July 1, 1997, A.W. Sorich died.

In August 1997, Jacobs wrote to Phillips asking that respondents execute the settlement agreement. On September 15, 1997, Jacobs, on appellants' instruction, forwarded to respondents a letter from Catanzaro which stated that appellants' offer to settle the litigation was withdrawn and settlement discussions terminated, except upon certain conditions, i.e., immediate payment of $400,000 and default payment of $1,000 per day beginning June 11, 1997.

On September 30, 1997, Jacobs withdrew as appellants' counsel of record.

Between October and December 1997 respondents moved for and then voluntarily dismissed their motions for an order to deposit the $400,000

settlement with the court (Code Civ. Proc.,[3] § 572), and for judgment on the settlement (§ 664.6). During the same period appellants wrote respondents several times that they were prepared to reject the settlement and proceed to trial unless the $400,000 sum included interest and daily late penalty charges from June 11, 1997, to date. On November 11, 1997, they retained their present attorneys.

On December 15, 1997, Hartford wrote appellants' new attorney demanding that appellants satisfy their settlement obligations to pay the $9,000 oversight invoice and obtain final approval from the Fund that it would not seek reimbursement from the settlement proceeds.

On January 7, 1998, respondents moved for dismissal of the action based solely on appellants' failure to bring the case to trial within five years of its August 4, 1992, commencement. (§ 583.310.) They acknowledged that a settlement was reached at a settlement conference, but argued that since the settlement was not reduced to judgment within the five-year period of section 583.310, the action had to be dismissed. Appellants opposed the motion on the ground the five-year statute was tolled by the settlement.

Appellants then moved under section 664.6 for judgment pursuant to the November 26, 1996, settlement and under section 572 for an order requiring respondents to deposit the $400,000 settlement sum with the court. They argued that the Fund approval provision in the November 26, 1996, settlement was inserted to protect their interests, that the parties agreed to a lump sum payment when the Fund refused approval, that the new payment schedule was agreeable to appellants who had alleviated their concerns with the Fund, that it was agreeable to respondents insofar as they had a cashier's check issued, and that they (appellants) could waive a condition that was solely for their benefit.

Appellants' two motions were consolidated for hearing with respondents' motion to dismiss. The court ruled that the November 26, 1996, settlement was conditioned on appellants' obtaining approval of the settlement from the Fund. It further concluded that because the Fund never approved the settlement, no settlement was ever reached. It then dismissed the action. The order of dismissal recites that the action was dismissed on the grounds that no settlement occurred. This, of course, is not a valid ground for dismissal, and we interpret the order, as do the parties, as dismissing for the reasons advanced by respondents—failure to bring the action to trial or have the settlement reduced to judgment within five years.

---

[3]All further section references are to the Code of Civil Procedure.

DISCUSSION

I

■ Appellants contend the dismissal of their action under section 583.310 was erroneous because the five-year dismissal period was tolled by the November 26, 1996, settlement. Respondents rely on *Varwig v. Leider* (1985) 171 Cal.App.3d 312 [217 Cal.Rptr. 208] (*Varwig*) which held that an action that is not brought to trial or reduced to judgment within five years of its commencement must be dismissed, even when settlement of the action in a pretrial conference disposed of all issues and the action was taken off calendar.

*Varwig* is contrary to the other cases that have considered this issue. (See *Brown & Bryant, Inc. v. Hartford Accident & Indemnity Co.* (1994) 24 Cal.App.4th 247, 255 [29 Cal.Rptr.2d 144] (*Brown & Bryant, Inc*); *Malouf Bros. v. Dixon* (1991) 230 Cal.App.3d 280, 285 [281 Cal.Rptr. 235] (*Malouf Bros.*); *Schiro v. Curci* (1990) 220 Cal.App.3d 840, 844-845 [269 Cal.Rptr. 639] (*Schiro*); *Gorman v. Holte* (1985) 164 Cal.App.3d 984, 988 [211 Cal.Rptr. 34] (*Gorman*).) These cases uniformly agree that once there has been a settlement in open court, the court can reasonably assume the matter has been finally disposed of and will not go to trial, even though details of execution may remain; consequently, there is no compelling reason a settlement agreement must be reduced to judgment within five years. As *Gorman* observed, section 583.310 does not require a case to reach judgment in five years, but merely that trial commence within that period. (*Gorman, supra,* at p. 988.) *Gorman* and its progeny also reason that the *Varwig* view thwarts the policy favoring settlements by discouraging settlement negotiations as the end of the five-year period approaches. (See *Brown & Bryant, Inc., supra,* at pp. 254-255.)

Additionally, since *Varwig* the five-year statute has been amended to particularly incorporate what had been simply a judicially created exception to the mandatory five-year dismissal. The computation of the five-year period now specifically excludes the time during which bringing the action to trial was impossible, impracticable, or futile. (§ 583.340, subd. (c).) As both *Schiro* and *Brown & Bryant, Inc.*, conclude, the time during which a settlement agreement is in effect tolls the five-year period, for the reason that attempting to bring an action to trial when all issues have been resolved through settlement would be futile. (*Brown & Bryant, Inc., supra,* 24 Cal.App.4th at pp. 255-257; *Schiro, supra,* 220 Cal.App.3d at p. 845.)

The trial court understandably followed *Varwig*, an opinion from this district, but for the reasons articulated therein, we conclude *Brown & Bryant,*

*Inc.*, *Malouf Bros.*, *Schiro*, and *Gorman* enunciate the better rule, and that section 583.310 was tolled following recitation of the November 26, 1996, settlement on the record.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The order of dismissal is reversed. The matter is remanded to the superior court with directions to reconsider appellants' section 664.6 motion and enter judgment thereon, including in such judgment any interest or penalties which may be due. We do not imply by our decision that appellants are entitled to any interest or penalties, but merely that the interests of judicial economy are best served if those issues are resolved in one proceeding.

Jones, P. J., and Hanlon, J.,† concurred.

---

*See footnote 1, *ante*, page 602.
†Presiding Justice of the Court of Appeal, First District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6, of the California Constitution.