Filed 11/14/13  Hernandez v. Tseheridis CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT HERNANDEZ,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>STEVE TSEHERIDIS,<br><br>    Defendant and Appellant. | G048946<br><br>(Super. Ct. No. SCVSS138772)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Donald R. Alvarez, Judge.  Affirmed in part, reversed in part, and remanded.

Law Offices of Guinevere M. Malley and Guinevere M. Malley for Plaintiff and Appellant.

Kirt J. Hopson for Defendant and Appellant.

# INTRODUCTION

This is the second appeal in long-running and wide-ranging court battles over the failed purchase of a piece of commercial real estate in Rialto. The buyer and seller have been litigating against each other since 2006 on various theories. Peripheral parties, such as the appellant here, Robert Hernandez, have also been sucked into the whirlpool. In this case, Hernandez is suing the seller, respondent and cross-appellant Steve (Stavros) Tseheridis, for canceling the escrow on the Rialto property; Hernandez intended to buy the liquor license and the trade fixtures associated with the property, which were being sold at the same time.

The case was tried in June 2011 and resulted in a defense verdict on two causes of action – breach of contract and fraud. One of the issues is whether the case should have been dismissed for exceeding the five-year rule. Tseheridis, who won at trial, has appealed on this issue. As for Hernandez, he has appealed from the refusal of the trial court to give collateral estoppel effect to one of the earlier incarnations of this *Bleak House* conflict and from a jury verdict he labels "inconsistent."

We affirm the trial court's refusal to dismiss the case for being brought to trial too late. The record indicates that if the case went over the line, it did so because of court congestion, not because of any untoward delay by Hernandez. We also affirm the trial court's decision not to apply collateral estoppel to the present case. The California Supreme Court has clearly stated that an arbitration decision cannot have nonmutual collateral estoppel effect.

But, regrettably, we must reverse the judgment on Hernandez's cause of action for breach of contract. The verdict was not inconsistent; the verdict form was wrong, as a matter of law. The error appears to have originated with the trial court, not with counsel, and it clearly prejudiced Hernandez. The cause of action must be retried.

2

## FACTS

In December 2005, Tseheridis and Thee Aguila, Inc., through its president, Henry Aguila, entered into a written agreement entitled "Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate" providing that Thee Aguila, Inc., or its assignee (Thee Aguila, LLC) would purchase certain real property located in Rialto from Tseheridis. After escrow failed to close, a dispute arose as to whether Tseheridis was entitled to keep Thee Aguila's $ 50,000 deposit as liquidated damages.

Tseheridis initiated arbitration through the American Arbitration Association pursuant to the arbitration provision contained in the agreement. An arbitration hearing occurred before a three-arbitrator panel in June 2007. The arbitrators issued an award at the end of July in which they found that the Aguila entities did not breach the agreement and concluded Tseheridis was therefore not entitled to retain the deposit as liquidated damages. The superior court confirmed the arbitration award, and we affirmed the superior court's decision in 2009, in an unpublished opinion. (*Thee Aguila, Inc. v. Tseheridis* (Apr. 24, 2009, G040066) [nonpub. opn.].)

In the meantime, Tseheridis filed a lawsuit in San Bernardino Superior Court in May 2007, alleging that the Aguila parties (now including Henry Aguila) had breached the Standard Offer Agreement and Escrow Instructions by not delivering the purchase funds and the necessary documents by the date specified in the escrow instructions. As he had in the arbitration, Tseheridis claimed he was entitled to the $50,000 deposit as liquidated damages.

The court granted Thee Aguila's motion for summary judgment, on collateral estoppel grounds, presumably because the arbitrators had already determined

3

that Tseheridis was not entitled to the deposit.[1]  Evidently this judgment was not appealed.

The plaintiff in this case, Hernandez, is a relative and a business associate of Henry Aguila.  The Rialto property over which Tseheridis and the Aguila parties are fighting consisted not only of real estate, but also of a liquor license and trade fixtures.[2]  Thee Aguila intended to purchase the real estate, and Hernandez was to buy the license and the fixtures.  Although only one agreement was signed by the parties, two escrows were opened, one for Thee Aguila as buyer of the real estate and the other for Hernandez as buyer of the license and fixtures.

After the sale fell through, Hernandez filed suit against Tseheridis in June 2006, alleging breach of contract.[3]  He alleged he had an agreement with Tseheridis to buy the license and fixtures, but Tseheridis canceled the escrow and withdrew his consent with Alcoholic Beverage Control to transfer the liquor license.  Tseheridis, for his part, testified he canceled the escrow because late in the deal Henry Aguila tried to change its terms.  Instead of obtaining a loan to buy the property, Aguila wanted Tseheridis to take a note for most of the purchase price.

The matter went to trial in June 2011.  Tseheridis argued at the outset that the case had to be dismissed because the case had not been brought to trial within the five-year limit.  The court denied this motion.  After the parties had rested, Hernandez argued that the prior arbitration between Thee Aguila and Tseheridis should be given collateral estoppel effect in this case, preventing Tseheridis from arguing that he was justified in canceling Hernandez's escrow because Henry Aguila or Thee Aguila had breached the sale agreement.  The court denied this request as well.

---

[1]  For some reason, a different judge granted Henry Aguila's motion for summary judgment, but did not specify the grounds.

[2]  Thee Aguila intended to use the property as a nightclub.

[3]  Hernandez filed a second amended complaint in June 2007, alleging 11 causes of action.  By the time of trial, only breach of contract and fraud remained.

4

The jury found for Tseheridis on both the breach of contract and fraud causes of action, using a special verdict that will be discussed in more detail below.

Hernandez has appealed from the denial of his motion regarding collateral estoppel and from the special verdict form.  He also complains about jury instructions regarding failure of conditions that he claims should have been given but were not.  Tseheridis has appealed the court's refusal to dismiss the action for failure to bring the case to trial in five years.

The judgment must be reversed.  Although the trial court did not abuse its discretion when it refused to dismiss the case, and although it ruled correctly on collateral estoppel, the special verdict on the breach of contract cause of action misstated the law.  This portion of the case must be retried.

## DISCUSSION

**I.          Dismissal under Code of Civil Procedure section 583.360[4]**

"'An action shall be brought to trial within five years after the action is commenced against the defendant.'  (§ 583.310.)  An action which is not brought within the prescribed period must be dismissed.  (§ 583.360, subd. (a).)  These requirements are mandatory 'and are not subject to extension, excuse, or exception except as expressly provided by statute.'  (§ 583.360, subd. (b).)  'In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: . . . [¶] (c) Bringing the action to trial . . . was impossible, impracticable, or futile.'  (§ 583.340.)

"What is impossible, impracticable, or futile is determined in light of all the circumstances of a particular case, including the conduct of the parties and the nature of the proceedings.  The critical factor is whether the plaintiff exercised reasonable

_____

4          All further statutory references are to the Code of Civil Procedure.

5

diligence in prosecuting its case. [Citation.] The statute must be liberally construed, consistent with the policy favoring trial on the merits. [Citation.]

"Generally, the determination whether prosecution of an action was impossible, impracticable, or futile is a matter within the trial court's discretion and will not be disturbed on appeal unless an abuse of discretion is shown. [Citation.]" (*Brown & Bryant, Inc., v. Hartford Accident & Indemnity Co.* (1994) 24 Cal.App.4th 247, 251-252.)

The complaint in this action was filed on June 15, 2006. According to the record before us, the impending expiration of the five-year rule was raised first at a hearing on February 7, 2011. At that time, the court set a trial date of May 9 for a two-week bench trial. A week later, Hernandez was back in court seeking to change the trial back to one before a jury. The court set a hearing on this motion for March 29. At the March 29 hearing, the court granted the motion and retained the same trial date, May 9. At a hearing on April 27, the defense represented that it was ready for trial on the May date. The clerk, however, informed the court that another five-year case was scheduled for trial on May 9. The court reset the trial date for June 14, in part to accommodate a personal matter. On June 2, at the trial readiness conference, the parties were ready to start on June 14, but the court had another trial in session. Plaintiff's opening statement and the testimony of the first witness took place on June 20.

On June 15, the defense made a motion to dismiss for failure to bring the case to trial within five years. At that point, jury voir dire was about to begin. Most of the argument concerning the motion centered on when the five years actually expired and when trial actually began. The court denied the motion, and voir dire commenced.

We review the outcome of the court's order, not its reasoning. (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15.) And we do not disturb a trial court's exercise of its discretion unless abuse is shown. (*De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 371.) Tseheridis has the

6

burden of establishing abuse of discretion. (*Sagi Plumbing v. Chartered Construction Corp.* (2004) 123 Cal.App.4th 443, 447.)

The record amply supports the trial court's decision. The plaintiff brought the impending expiration of the five-year rule to the court's attention well before the deadline. A trial date comfortably in advance of the expiration date was secured, and both sides were ready to proceed. Then, through no fault of Hernandez, the May trial date, which the judge had confirmed in March, was continued because he was unavailable. The June 14 trial date, which the court assured the parties "will . . . definitely be certain," had to be continued because the judge was in trial with another case.

The period to get a case to trial is tolled when a courtroom, or a judge, is unavailable. (*Chin v. Meier* (1991) 235 Cal.App.3d 1473, 1477-1478.) In this case, the trial date was continued over a month after the first "confirmed" trial date of May 9, because another case was being tried, and then a "definitely certain" date of June 14 had to be continued again because the judge was still in trial. Tseherides also failed to present evidence that Hernandez had not been reasonably diligent in prosecuting the case during the previous five years. Under these circumstances, we cannot find the court abused its discretion in denying the motion to dismiss.

## II.        Collateral Estoppel

Whether collateral estoppel applies is a question of law, which we review de novo. (*Happy Nails & Spa of Fashion Valley, L.P. v. Su* (2013) 217 Cal.App.4th 1459, 1469.)

"Collateral estoppel is one of two aspects of the doctrine of res judicata. In its narrowest form, res judicata "'precludes parties or their privies from relitigating a *cause of action* [finally resolved in a prior proceeding].'" [Citation.] But res judicata also includes a broader principle, commonly termed collateral estoppel, under which an *issue* "'necessarily decided in [prior] litigation [may be] conclusively determined *as*

7

*[against] the parties [thereto] or their privies* . . . in a subsequent lawsuit on a *different* cause of action."' [Citation, italics added.] [¶] Thus, res judicata does not merely bar relitigation of identical claims or causes of action. Instead, in its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case. Moreover, because the estoppel need not be mutual, it is not necessary that the earlier and later proceedings involve the identical parties or their privies. Only the party *against whom* the doctrine is invoked must be bound by the prior proceeding. [Citations.] [¶] Accordingly, the collateral estoppel doctrine may allow one who was not a party to prior litigation to take advantage, in a later unrelated matter, of findings made against his current adversary in the earlier proceeding. This means that the loss of a particular dispute against a particular opponent in a particular forum may impose adverse and unforeseeable litigation consequences far beyond the parameters of the original case. [Citation.]" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828-829 (*Vandenberg*).)

In *Vandenberg*, the Supreme Court held that "a private arbitration award cannot have nonmutual collateral estoppel effect unless the arbitral parties so agree." (*Vandenberg, supra,* 21 Cal.4th at pp. 836-837.) As the court pointed out, in the interest of avoiding the expense and delay of a court battle, a party may decide to assume the "risk that the arbitration will result in a 'final' and 'binding' *defeat* with respect to *the submitted claims*, even though the party would have won in court, and even though the arbitrator's errors must be accepted without opportunity for review. [Citation.] But this does not mean each arbitral party also consents that issues decided against him by this informal, imprecise method may bind him, in the same manner as a court trial, in *all future* disputes, *regardless* of the stakes, against *all* adversaries, known and unknown." (*Id.* at p. 832.) The court also noted that "California's private arbitration statutes . . . do not warn parties who choose arbit[r]ation over court litigation that the arbitrator's award

8

may be used against them by third persons to resolve different causes of action. The contractual nature of private arbitration dictates that the scope and effect of an arbitral award must derive from the parties' consent. Yet the informal nature of arbitration, the usual reasons for its use, the potentially disproportionate consequences of nonmutual collateral estoppel, and the fact that such consequences may not be immediately apparent to the arbitral parties, all suggest that their silence on the subject does not imply consent. Fairness and public policy thus counsel against application of nonmutual collateral estoppel in this setting, unless the parties specifically agree thereto." (*Id.* at p. 835.)

In this case, Hernandez was not a party to the arbitration between Thee Aguila and Tseheridis, in which the arbitrators held in favor of Thee Aguila, and there is no evidence that the parties agreed that the arbitrators' decision could have collateral estoppel effect beyond the parties. The arbitration provision in the "Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate" of December 2005 certainly reflects no such agreement. The arbitration award could have no collateral estoppel effect against Tseheridis in this action, and the court correctly denied the request to instruct the jury regarding collateral estoppel.

At trial, Hernandez focused on the summary judgment motion granted in the 2007 superior court case between Thee Aguila and Tseheridis. The ruling in that case, however, was based in turn on the ruling in the arbitration. It was the arbitrators who decided that Thee Aguila had not breached the agreement, not the superior court. The superior court decided only that Tseheridis could not litigate this issue again.

It was permissible to consider the arbitration in evaluating res judicata or collateral estoppel in the 2007 case, because the parties were the same in both instances. (See *Vandenberg, supra*, 21 Cal.4th at p. 824, fn. 2.) Under *Vandenberg*, however, it is not permissible for Hernandez – who was not a party to the arbitration – to use the arbitrators' decision for collateral estoppel effect in his case against Tseheridis.

**III.        Special Verdict**

9

The special verdict for the breach of contract cause of action, as presented to the jury, stated:

"Question 1: Did Robert Hernandez, by way of an assignment of rights from Thee Aguila, Inc., enter into a contract with Steve Tseheridis which it Exhibit 1 the Standard Offer?

"YES                                    NO

"If your answer to question number 1 is 'yes,' then Skip question 2 and go on to the next question.

"If you answered 'no,' go on to the next question.

"Question 2: Did Robert Hernandez, by way of an assignment of rights from Thee Aguila, Inc., enter into a contract with Steve Tseheridis which is Exhibit(s) 8 and 12 the Bill of Sale?

"YES                                    NO

"If you answer question number two 'yes,' then answer the next question.

"If you answer question number two 'no,' then stop here, answer no further questions, have the presiding juror sign and date this form then go on to the fraud verdict form.

"Question 3: Did Robert Hernandez do all, or substantially all, of the significant things that the contract required him to do?

"YES                                    NO

"If you answer question number three 'yes' or 'no' then go on to the next question 4.

"Question 4: Was Robert Hernandez excused or prevented by the actions of the defendant from having to do all or substantially all of the significant things that the contract required him to do?

"YES                                    NO

"If you answer question number four 'yes,' then answer the next question.

10

"If you answer question number four 'no,' stop here, answer no more questions, have the presiding juror sign and date this form then go on to the fraud verdict form."

The jury responded "No" to the first question (on a divided vote), "Yes" to the second question (another divided vote), "Yes" unanimously to the third question, and "No" unanimously to the fourth question. Following instructions, the jury stopped there.

This verdict form is clearly flawed. A plaintiff in a breach of contract action must establish *either* that he performed all or substantially all of his obligations under the contract *or* that he was excused from performing, but not both.[5] (See, e.g., *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614 [elements of cause of action]; *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 655 [same]; *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178 [summary judgment proper if no evidence of either performance or excuse for non-performance].) If Hernandez performed, as the jury found, then his performance did not need to be excused.

Question three is obviously the culprit. If the jury answered "yes" to that question, it should have been told to skip question four, the one about being excused, and go on to other elements of the cause of action. Only if the jury had answered question three "no" would it need to consider whether Hernandez was excused or prevented from performing. According to this verdict form, however, whether the jury answered "yes" or "no" to question three did not matter; either way, it had to go to question four.[6] When it answered question four "no," it was told to move on to the fraud verdict form. As a result, the jury did not answer additional questions on the special verdict form that needed to be answered, given the jury's answers to questions two and three. It did not

_____

[5]     Of course, a plaintiff could have performed some of his or her obligations and have been excused from performing others, but that is not the tenor of this verdict form. This form asked about "all or substantially all" of Hernandez's obligations in each question.

[6]     Verdict Form VF-300, on which this special verdict was based, correctly gives the jury a choice between performance and excuse of performance.

11

address important questions on the special verdict form pertaining to a breach of contract claim (e.g., question five, whether Tseheridis breached the contract; question seven, whether Hernandez "was harmed by any breach" and question seventeen, "what are Robert Hernandez's damages for Steve Tseheredis' breach of contract?") and possible affirmative defenses (questions eight through sixteen).

How the special verdict form got into this state is not entirely clear. The record contains multiple versions of a proposed special verdict form submitted by counsel; none of them includes this error. The record does reflect lengthy arguments about the wording of the special verdict (although hardly at all about what came to be question three), even after the jury had been instructed and was sitting in the deliberation room. It appears that the judge finally became so frustrated with the endless arguments, which were going around in circles while the jury waited, that he devised his own special verdict form, based on the versions before him.[7]

The verdict was not inconsistent, as would be the case if, for example, a jury found that a plaintiff was an at-will employee who could be fired only for cause. (See *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345.) Instead, the verdict form itself potentially directed the jury to make a mistake of law, as it did. Moreover, it was contrary to the related jury instruction, which correctly told the jury to decide either whether Hernandez had performed or whether he was excused.

Hernandez was unquestionably prejudiced by this mistake. The jury found that he had a contract; it also found, unanimously, that he had performed his contractual obligations. But because he had not *also* been excused, the jury did not consider the rest of the cause of action. This is an incorrect statement of the law of contracts. There is no way to fix this at the appellate level, and the cause of action must be retried. (See *Byrum v. Brand* (1990) 219 Cal.App.3d 926, 938-393 [verdict form incorrectly stated law of

---

[7] Nothing in the record suggests that counsel saw the judge's verdict form before it went to the jury room.

12

fiduciary duty; causes of action must be retried].)  The verdict on the cause of action for fraud, however, was not affected by the error, and, in any event, Hernandez has not appealed from that part of the verdict.  This portion of the judgment is therefore affirmed. (See *id.* at p. 947.)

## DISPOSITION

The judgment on the cause of action for breach of contract is reversed.  In all other respects, the judgment is affirmed.  The parties are to bear their own costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.


13