[No. H031726. Sixth Dist. Dec. 19, 2008.]

ISMAEL PEREZ, Plaintiff, Cross-defendant and Respondent, v.
ELVIA GRAJALES, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Dell'Ario & LeBoeuf, Alan Charles Dell'Ario; Bennett, Johnson & Galler and Richard C. Bennett, for Defendant, Cross-complainant and Appellant.

Law Offices of Ismael D. Perez, Ismael D. Perez; Law Offices of Delman Smith, Delman Smith; Hogan, Holmes & Usoz and Thomas R. Hogan for Plaintiff, Cross-defendant and Respondent.

## OPINION

**DUFFY, J.**—As we observed three years ago, "The Mandatory Fee Arbitration Act (MFAA), under Business and Professions Code section 6200 et seq., provides a quick and inexpensive method for clients, at their option, to resolve fee disputes with their attorneys." (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1083 [29 Cal.Rptr.3d 499], fn. omitted.) In the attorney-client fee dispute before us—which arose out of federal litigation that was settled 10 years ago—the resolution of the dispute has proved neither quick nor inexpensive.

Appellant Elvia Grajales retained respondent Ismael Perez in 1996 to represent her on a contingent fee basis in connection with claims against her former employer. After the employment litigation was resolved in late 1998 with Grajales receiving a substantial settlement payable to Perez's trust account, a dispute arose concerning the amount of net proceeds that were due to Grajales. She ultimately applied with the local county bar association to arbitrate her dispute with Perez under the MFAA (Mandatory Fee Arbitration Act). Grajales prevailed and received an arbitration award of $173,715 in December 2001.

Perez timely filed a complaint with the superior court rejecting the arbitration award in accordance with Business and Professions Code section 6204, subdivision (c). Grajales filed a cross-complaint, which was amended on several occasions. More than five years after the filing of the complaint, Grajales moved to dismiss the complaint under the mandatory provisions of the Code of Civil Procedure (Code Civ. Proc., §§ 583.310, 583.360).[1] Perez filed his own motion to dismiss Grajales's third amended cross-complaint (Cross-Complaint) under the same statutes. In addition, Grajales moved to confirm the fee arbitration award and to enter judgment on the confirmed award. The court granted both motions to dismiss and denied Grajales's motion to enter judgment on the arbitration award.

Grajales challenges the orders dismissing her Cross-Complaint and denying the motion to confirm and enter judgment on the arbitration award. She claims that the Cross-Complaint was not subject to dismissal under the mandatory provisions of the Code of Civil Procedure because after the periods of time that it was "impossible, impracticable, or futile" to bring the case to trial (§ 583.340, subd. (c)) are deducted, there was less than five years from the filing of the Cross-Complaint to dismissal. Grajales also contends that the court should have confirmed the fee arbitration award, because Perez effectively repudiated his prior request for trial de novo of the

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise stated.

arbitration award by failing to diligently prosecute his complaint so that it was involuntarily dismissed. We conclude that the court did not err in dismissing the Cross-Complaint. But we hold further that the court should have granted the motion to confirm the fee arbitration award and enter judgment on that confirmed award. Accordingly, we will reverse the order denying that motion.

## FACTS AND PROCEDURAL HISTORY

On April 24, 1996, Grajales entered into a contingency fee agreement with Perez under which he would represent her in connection with "her employment claims against Airtronics." The agreement provided that Grajales would pay Perez a contingency fee of 33⅓ percent of "all gross recoveries" if the matter settled before the taking of any depositions, and 40 percent of "all gross recoveries" if the case settled after the taking of the first deposition. The agreement did not define the term "all gross recoveries."

According to a settlement agreement signed by Grajales in November 1998, she filed a lawsuit against Airtronics in the United States District Court, Northern District of California, seeking damages related to the loss of her position with Airtronics, injury to her reputation, and mental and emotional distress. After two mistrials, a jury awarded Grajales $441,625. Perez and his cocounsel, Michael Morrissey, filed a posttrial motion for attorney fees and were awarded a total sum of $300,000.[2] The case went on appeal before the United States Court of Appeals for the Ninth Circuit. The settlement agreement noted that after the parties had engaged in extensive settlement discussions and mediation supervised by the Ninth Circuit, they had reached a settlement on November 19, 1998, pursuant to which Airtronics agreed to pay a specified sum to Perez's trust account in full settlement of the action.

Thereafter, on or about May 17, 2001, Grajales filed an application with the Santa Clara County Bar Association (SCCBA) to arbitrate a fee dispute with Perez. She alleged that the amount of the dispute was $124,000, plus interest. In her description of the dispute attached to the application, Grajales stated that (1) Perez had refused her request to provide her with a summary of the expenses incurred in the Airtronics litigation; (2) pursuant to her fee agreement with Perez, she was entitled to 60 percent of the gross recovery; and (3) her "portion of the gross recovery [was] short by $124,000.00."

A three-member panel of the SCCBA fee arbitration committee conducted an arbitration on November 14, 2001. As reflected in the subsequent arbitration award, Perez, Grajales, and Morrissey appeared at the arbitration. On

---

[2] The order awarding attorney fees allocated the $300,000 as $165,000 for Morrissey and $135,000 for Perez.

December 12, 2001, the three-member panel entered their arbitration award in favor of Grajales in the total sum of $173,715. The panel concluded that under the contingency fee agreement, Perez was entitled to receive 40 percent of "all gross recoveries."[3] Because Grajales had already been charged $380,000—rather than the $256,000 owed under the fee agreement—the panel concluded that she was entitled to the difference ($124,000), plus interest and filing fees.

On January 16, 2002, Perez filed an unverified complaint against Grajales to reject the nonbinding arbitration award of the SCCBA panel. On February 22, 2002, Grajales answered the complaint and filed a cross-complaint against Perez, Morrissey, and his law firm. In the cross-complaint, she alleged that Perez and Morrissey had falsely represented to her that, contrary to the terms of her fee agreement with Perez, she was entitled to $260,000 of the gross amount of the settlement of the federal action. Grajales alleged claims for fraud, breach of fiduciary duty, and breach of contract. She later dismissed Morrissey as a cross-defendant.

On or about April 9, 2007, Grajales filed a motion to dismiss the complaint pursuant to sections 583.310 and 583.360 for failure to prosecute the case to trial within five years.[4] She concurrently filed a motion to confirm the SCCBA fee arbitration award and to enter judgment on the confirmed award. She argued in that motion that Perez, through his dilatory conduct in the prosecution of the complaint, had "effectively repudiated his request for a trial de novo . . . ." The two motions were accompanied by a declaration of counsel attaching some 52 exhibits that Grajales claimed supported her position that Perez had been extremely dilatory in prosecuting the case. Perez filed separate oppositions to the motion to dismiss and the motion to confirm and enter judgment on the fee arbitration award.

Also on or about April 9, 2007, Perez filed a motion to dismiss the Cross-Complaint, on the basis that it had not been prosecuted to trial within five years as required under sections 583.310 and 583.360.[5] Grajales opposed

---

[3] The arbitration panel also concluded that, while there was conflicting testimony as to what was discussed between Perez, Grajales, and Morrissey during the mediation of the federal court action, there was no binding modification of the fee agreement entered into between Perez and Grajales.

[4] The caption of, and introduction to, Grajales's motion erroneously identified section 583.340—which, as discussed, *post*, concerns the circumstances under which the time for bringing an action to trial will be tolled for purposes of computing the five-year limitation for prosecuting an action—rather than sections 583.310 and 583.360 as the statutory authority for the motion to dismiss.

[5] Perez also cited the wrong code section—section 583.320, which concerns the duty to prosecute a case within certain time limits after the granting of a motion for new trial—in support of his motion to dismiss. It is clear, however, from the argument presented in his

the motion. After hearing argument on the three motions, on May 11, 2007, the court granted both parties' motions to dismiss, ordered both the action and cross-action dismissed, and denied Grajales's motion to confirm the fee arbitration award and enter judgment on the award.

Grajales filed a timely notice of appeal from the order.[6] An order dismissing an action is a proper subject for appeal, pursuant to sections 581d, and 904.1. (*Southern Pac. R. R. Co. v. Willett* (1932) 216 Cal. 387, 390 [14 P.2d 526] [dismissal order under former statute requiring action to be brought to trial within five years appealable].)[7] We likewise conclude that the order denying Grajales's motion to confirm the arbitration award and enter judgment on the award is appealable, because the MFAA (Bus. & Prof. Code, § 6203, subd. (b)) permits a party to petition to confirm an arbitration award in the same manner that arbitration awards may be confirmed under section 1285 et seq. (See § 1294, subds. (b) [appeal may be taken from "order dismissing a petition to confirm . . . an award"], (c) [appeal may be taken from order vacating arbitration award]; see also *Ray Wilson Co. v. Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1085, fn. 1 [213 Cal.Rptr. 62] [order denying petition to confirm arbitration award "in effect dismisses the proceeding before the court and is equivalent to an order vacating the award"], disapproved on other grounds in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 27–28 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

## DISCUSSION

### I. *Issues on Appeal*

The issues on appeal are as follows:

1. Whether there was a period in which it was "impossible, impracticable, or futile" to bring the Cross-Complaint to trial under section 583.340, subdivision (c), and if so, whether after subtraction of that period from the time the Cross-Complaint was pending, the cross-action was subject to dismissal under the mandatory five-year provisions of sections 583.310 and 583.360.

2. Whether the court, based upon its dismissal of the complaint for failure to prosecute it to trial, should have confirmed the fee arbitration award and entered judgment on the award.

motion that the true basis for the motion was Grajales's failure to bring her Cross-Complaint to trial within five years as required under sections 583.310 and 583.360.

[6] Perez did not file an appeal from the order of dismissal of the complaint. Accordingly, the propriety of that order is not before us.

[7] Section 581d provides in relevant part that "[a]ll dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes . . . ."

## II. *Dismissal of Third Amended Cross-complaint*

Grajales contends that the court erred by dismissing her Cross-Complaint. In asserting that the five-year period for bringing a case to trial under section 583.310 had not expired, she argues that there were four separate periods during which it was "impossible, impracticable, or futile" to bring the Cross-Complaint to trial under section 583.340, subdivision (c).[8] After discussing the basic law applicable generally to mandatory dismissal motions brought under section 583.310, we address each of these periods in which Grajales claims that it was "impossible, impracticable, or futile" to bring the Cross-Complaint to trial.

### A. *Applicable Law*

Under section 583.310, an action must be brought to trial within five years after its commencement against a defendant. By statutory definition, "action" includes a cross-complaint (§ 583.110, subd. (a)), and "defendant" includes a cross-defendant (*id.*, subd. (d)). (See also *Tomales Bay etc. Corp. v. Superior Court* (1950) 35 Cal.2d 389, 393 [217 P.2d 968] [cross-complaint is subject to mandatory dismissal under former § 583, where cross-complainant failed to bring it to trial within five years of its filing].) An action not brought to trial within five years "shall be dismissed by the court on its own motion or on motion of the defendant, . . ." (§ 583.360, subd. (a); see also *id.*, subd. (b) ["requirements of this article are mandatory"].) The parties, however, may extend the five-year statute in writing or by a recital on the record in court. (§ 583.330.) Additionally, section 583.340 provides specifically that the five-year period does not include the time that the court's jurisdiction is suspended (*id.*, subd. (a)); the trial or prosecution of the case was stayed or enjoined (*id.*, subd. (b)); or the "[b]ringing [of] the action to trial, for any other reason, was impossible, impracticable, or futile." (*Id.*, subd. (c).) Although the impossibility exception is now prescribed by statute, it has its origins in a judicially created exception to the five-year statute. (*Hughes v. Kimble, supra*, 5 Cal.App.4th at p. 66.)

The mandatory dismissal statute is founded upon the policy of the diligent prosecution of actions. (See § 583.130: "It is the policy of the state that a plaintiff shall proceed with reasonable diligence in the prosecution of an action but that all parties shall cooperate in bringing the action to trial or other disposition. . . .") A plaintiff (in this instance, a cross-complainant) has the duty " 'at every stage of the proceedings to use due diligence to expedite his case to a final determination.' [Citations.]" (*Crown Coach Corp. v.*

---

[8] We will occasionally use the shorthand reference of "the impossibility exception" in connection with this provision of the Code of Civil Procedure. (See *Hughes v. Kimble* (1992) 5 Cal.App.4th 59, 66 [6 Cal.Rptr.2d 616].)

*Superior Court* (1972) 8 Cal.3d 540, 548 [105 Cal.Rptr. 339, 503 P.2d 1347] (*Crown Coach*), overruled on other grounds in *Hocharian v. Superior Court* (1981) 28 Cal.3d 714, 722, fn. 5 [170 Cal.Rptr. 790, 621 P.2d 829].) This includes the obligation to apprise the court of the need to set the case for trial within the five-year statute. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 434 [41 Cal.Rptr.2d 362, 895 P.2d 469] (*Howard*); see also *Dresser v. Bindi* (1990) 221 Cal.App.3d 1493 [271 Cal.Rptr. 137] [after requesting trial de novo rejecting judicial arbitration award after case was in arbitration more than four and one-half years after commencement of action, plaintiff had duty to advise court of correct date that five-year statute would run in order to have case set for trial within statutory period].)

■ Under the impossibility exception of section 583.340, subdivision (c), "[w]hat is impossible, impracticable, or futile is determined in light of all the circumstances of a particular case, including the conduct of the parties and the nature of the proceedings. The critical factor is whether the plaintiff exercised reasonable diligence in prosecuting its case. [Citation.] The statute must be liberally construed, consistent with the policy favoring trial on the merits. [Citation.]" (*Brown & Bryant, Inc. v. Hartford Accident & Indemnity Co.* (1994) 24 Cal.App.4th 247, 251 [29 Cal.Rptr.2d 144].) "Reasonable diligence places on a plaintiff the affirmative duty to make every reasonable effort to bring a case to trial within five years, even during the last month of its statutory life. [Citation.]" (*Baccus v. Superior Court* (1989) 207 Cal.App.3d 1526, 1532 [255 Cal.Rptr. 781].) A showing of reasonable diligence alone is not enough; "rather, reasonable diligence constitutes a guideline by which to assess the existing exceptions of impossibility, impracticability, or futility. [Citation.]" (*Id.* at pp. 1532–1533.)

The determination of whether the impossibility exception applies involves a fact-specific inquiry and depends "on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles. [Citation.]" (*Howard, supra,* 10 Cal.4th at p. 438.) The plaintiff (cross-complainant) bears the burden of proof with respect to the existence of circumstances warranting the application of the impossibility exception. (*Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 329 [54 Cal.Rptr.3d 175] (*Tamburina*); *Bank of America v. Superior Court* (1988) 200 Cal.App.3d 1000, 1013 [246 Cal.Rptr. 521].) The trial court has discretion to determine whether the impossibility exception applies, and that decision will be disturbed on appeal only if an

abuse of that discretion is shown. (*Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1271 [135 Cal.Rptr.2d 869]; *Hughes v. Kimble, supra*, 5 Cal.App.4th at p. 71.)[9]

### B. *Periods Claimed Under Impossibility Exception*

Grajales argues that there were four separate time periods—totaling 560 days—during which it was "impossible, impracticable, or futile" to bring the Cross-Complaint to trial within the meaning of section 583.340, subdivision (c). We address each of these four periods below.

#### 1. *Notices of unavailability by opposing counsel/party*

Grajales notes that Perez, who was both a party and cocounsel of record for himself, filed three separate notices of unavailability in 2003 pursuant to *Tenderloin Housing Clinic, Inc. v. Sparks* (1992) 8 Cal.App.4th 299 [10 Cal.Rptr.2d 371]. These three notices indicated that Perez would be unavailable for any purpose for periods of 12, 12, and 26 days, respectively, for a total period of unavailability of 50 days.[10] Grajales contends that this collective period of Perez's unavailability should have been excluded in the calculation of the time the Cross-Complaint was pending because it constituted impossibility, impracticability, or futility. We reject that contention.

As Grajales herself admits, this argument was not presented to the trial court. "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court. [Citation.]" (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 26 [267 Cal.Rptr. 896]; see also *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 [8 Cal.Rptr.3d 840]: "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.") We will therefore "ignore arguments, authority, and facts not presented and litigated in the trial court." (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73 [115 Cal.Rptr.2d 3].) Such arguments raised for the first time on appeal are

---

[9] Citing *Tamburina, supra*, 147 Cal.App.4th at page 326, Grajales urges that we independently review the trial court's order of dismissal here, rather than determine whether there was an abuse of discretion. We disagree with Grajales that the independent review standard is appropriate here where we are considering whether the court correctly decided—based upon a review that included evidentiary matters—that the five-year statute had run and that the impossibility exception did not apply to certain periods claimed by Grajales.

[10] Grajales asserts that the total period of unavailability is 47 days. Because we read each of the notices of unavailability to state that Perez would be unavailable for all purposes between and including the starting and concluding dates designated in each notice, we believe the total time of unavailability is 50 days.

generally deemed forfeited. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2 [13 Cal.Rptr.3d 786, 90 P.3d 746].)

This conclusion is particularly appropriate here, where Grajales, in essence, contends that the court erred by not excluding the time of Perez's unavailability, even though the court was not made aware of this circumstance. Since we review a trial court's decisions concerning the applicability of the impossibility exception for abuse of discretion (*Sanchez v. City of Los Angeles, supra,* 109 Cal.App.4th at p. 1271), it would indeed be peculiar for us to determine here that the court abused discretion it was never given an opportunity to exercise. We therefore reject as being forfeited Grajales's claim that the collective period stated in Perez's three notices of unavailability should have been excluded in calculating the time the Cross-Complaint was pending.[11]

### 2. *Illness of opposing counsel/party*

Grajales argues that there was at least one trial postponement that occurred in 2005 because of Perez's statement to the court that he had significant health problems occurring as a result of complications from surgery. She notes that a trial scheduled for March 28, 2005, was continued for a period of 83 days to June 20, 2005, following an ex parte application to continue presented by Morrissey with the accompanying declaration of Perez explaining his health circumstances.

As was the case with her argument concerning the Perez notices of unavailability, Grajales did not argue below that the trial continuance based on Perez's health problems justified the exclusion of 83 days (or any other amount of time) in calculating the period that the Cross-Complaint was pending. She therefore forfeited the right to make this new argument on appeal. (*Asbestos Claims Facility v. Berry & Berry, supra,* 219 Cal.App.3d at p. 26.)

---

[11] We moreover reject Grajales's assertion—based upon her citation of *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]—that it is appropriate for us to consider her argument raised for the first time on appeal because it "presents a pure question of law based on facts appearing in the record and as such may be raised for the first time on appeal." As Perez observes, the three notices of unavailability relied on by Grajales were apparently— based upon the superior court docket statement before us—not part of the court's files. Such inclusion of unfiled documents is improper. (Cal. Rules of Court, rule 8.124(g) ["Filing an appendix constitutes a representation that the appendix consists of accurate copies of documents *in the superior court file*." (Italics added.)]; *Eby v. Chaskin* (1996) 47 Cal.App.4th 1045, 1047, fn. 1 [55 Cal.Rptr.2d 517] [criticizing litigants for including in the appendices documents not filed with the trial court].) More to the point, since the notices were not filed with the court below, Grajales's argument based on them—putting aside whether it is a purely legal one as she claims—is not based on " 'facts appearing in the record. . . .' " (*Ward v. Taggart, supra,* at p. 742.)

### 3. *Pendency of motions filed by Perez*

Grajales also argues that there were other time periods that were subject to the impossibility exception. As best we can determine from her opening brief, her contention is that, within the meaning of section 583.340, subdivision (c), it was "impossible, impracticable, or futile" for her to bring her Cross-complaint to trial for a period of 388 days that potentially "dispositive motions" filed by Perez were pending.[12]

In support of her claim that the impossibility exception applies here, Grajales notes that Perez filed a number of motions challenging various versions of her cross-complaint. Perez filed a motion for summary judgment that was decided by the court by an order filed December 1, 2004. In October 2005, Perez filed a motion for summary adjudication. By order filed January 23, 2006, the court denied that motion and treated it as a motion for judgment on the pleadings with respect to the initial cross-complaint; it granted that motion with leave to amend to permit Grajales to sufficiently allege reliance in support of her fraud claim. Perez filed a demurrer and motion to strike relative to the first amended cross-complaint, which was granted in part by order filed May 22, 2006. In August 2006, Perez filed another motion for summary adjudication directed towards the second amended complaint. By order filed November 8, 2006, the court denied summary adjudication, treated the motion as one for judgment on the pleadings, and granted that motion with leave to amend as to the fraud cause of action "on the basis that Grajales has conceded certain pleading errors and requested leave to amend." After Grajales again amended her pleading, Perez filed a demurrer to the Cross-Complaint in January 2007. That demurrer was not heard because Grajales filed an amendment to the Cross-Complaint to correct certain headings. Perez thereafter filed a demurrer to the Cross-Complaint, as amended, which was overruled in March 2007.

Grajales argues that these procedural circumstances compelled the trial court to find that it was "impossible, impracticable, or futile" (§ 583.340, subd. (c)) to bring the case to trial during the time periods that these issues were being decided. But as the Supreme Court explained in *Crown Coach,*

---

[12] In her statement of facts, Grajales also argues that Perez's allegedly dilatory conduct with respect to discovery resulted in the postponement of the judicial arbitration hearing. Apparently, no arbitration ever occurred during the approximately 16 months (Oct. 2002 to Feb. 2004) that the case was referred to judicial arbitration. Grajales does not appear to argue directly that the period that the case was referred to judicial arbitration should be excluded in calculating the length of time that the Cross-Complaint was pending. Such an argument would in any event be without merit. (See *Serrano v. FMC Corp.* (1990) 221 Cal.App.3d 1027, 1030 [271 Cal.Rptr. 41] [no tolling of five-year statute while case is referred to judicial arbitration unless it "is or remains submitted to arbitration within six months of the expiration of the statutory period"].)

*supra*, 8 Cal.3d at page 548, the impossibility exception does "not contemplate 'that time consumed by the delay caused by ordinary incidents of proceedings like disposition of demurrer, amendment of pleadings and the normal time of waiting for a place on the court's calendar or securing a jury trial is to be excluded from a computation of the five-year period. [Citation.]' [Citations.]" Further, while Grajales challenges the propriety of Perez's actions, as a cross-defendant he was within his rights to assert legal challenges to various cross-complaints that were successively amended. (*Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 389, fn. 3 [102 Cal.Rptr.2d 125].)

■ Moreover, Grajales's position ignores the fact that a cross-complainant seeking to apply the impossibility exception must, in addition to presenting the circumstance, show a causal connection between it and the failure to proceed to trial (*Tamburina, supra*, 147 Cal.App.4th at pp. 329, 333), and that the cross-complainant acted with reasonable diligence in prosecuting the case (*id.* at p. 336). The papers presented in opposition to Perez's motion to dismiss do not clearly demonstrate such causal connection or diligence. For example, on the question of diligence, there is no indication that Grajales, through her counsel, made any specific efforts to obtain a trial date before the five-year anniversary of the initial filing of her cross-complaint or that she otherwise alerted the court that a trial date needed to be set in order to prevent mandatory dismissal. (See, e.g., *De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 374 [65 Cal.Rptr.3d 882] [plaintiff in intervention, within last six months of five-year statute, had duty to advise court that it had set a trial date after expiration of that period, and it was thus not diligent when it acquiesced in court's setting of that trial date]; *Sanchez v. City of Los Angeles, supra*, 109 Cal.App.4th at pp. 1273–1274 [impossibility exception rejected in part because plaintiffs' counsel did not apprise court of impending five-year anniversary or attempt to secure trial date within five years].) In fact, as late as March 15, 2007, at the hearing on Perez's demurrer, Grajales's counsel raised the issue that, although he "[did not] have the exact date[, f]ive years is going to run in the next few months . . . ."

Grajales bore the burden of establishing the applicability of the impossibility exception to the circumstances of the pending motions filed by Perez. (*Tamburina, supra*, 147 Cal.App.4th at p. 329.) The court impliedly found that she did not meet that burden. We conclude that such an implied finding did not constitute an abuse of discretion by the court. (See *Sanchez v. City of Los Angeles, supra*, 109 Cal.App.4th at p. 1271.)

### 4. *Extraordinary writ proceeding*

The court entered an order denying Perez's motion for summary judgment on Grajales's initial cross-complaint on December 1, 2004. Perez filed a

petition for writ of mandate or prohibition with this court on or about December 27, 2004. We denied that petition on February 3, 2005. Grajales argues that the 39 days that Perez's writ petition was pending in this court should be excluded in calculating the period that the Cross-Complaint was pending. In support of this position, she relies on *New West Fed. Savings & Loan Assn. v. Superior Court* (1990) 223 Cal.App.3d 1145 [273 Cal.Rptr. 37] (*New West*).

In *New West*, the defendant's motion for summary judgment was denied. (*New West, supra*, 223 Cal.App.3d at p. 1147.) After the appellate court granted the defendant's initial petition for writ of mandate and required the trial court to enter an order compliant with section 437c, the trial court issued a new order denying summary judgment, from which the defendant filed a second mandate petition. (*New West, supra*, at pp. 1147–1148.) The appellate court entered an order staying the trial proceedings during the pendency of the first writ petition, but did not do so with respect to the second petition. (*Ibid.*) The defendant thereafter was unsuccessful in moving to dismiss the action for failing to bring the case to trial within five years and then filed a new mandate petition, arguing, inter alia, that the trial court erred in applying the impossibility exception to the 50-day period in which the second writ petition was pending. (*Id.* at p. 1148.) The appellate court rejected the defendant's argument, concluding that the trial court's application of the impossibility exception "was amply supported by the evidence." (*Id.* at p. 1152.) The court reasoned, "This court's decision on the writ could have disposed of the entire action, making a trial in the case unnecessary. Had [the] plaintiffs started the trial while the writ was pending, and had the writ been granted, the trial to that point would have been a complete waste of time, money and judicial resources. Moreover, there was the possibility the writ would have disposed of just some of the issues because the summary judgment motion alternatively sought summary adjudication of issues. Thus, if the trial had begun on all issues and the writ disposed of some of those issues, the trial would have been misdirected to that point." (*Ibid.*)

Under *New West, supra*, 223 Cal.App.3d 1145, it would have been appropriate to exclude the period in which Perez challenged the denial of his summary judgment motion in this court. (See also *Kaye v. Mount La Jolla Homeowners Assn.* (1988) 204 Cal.App.3d 1476, 1483–1485 [252 Cal.Rptr. 67] [impossibility exception applied while plaintiffs pursued writ petition challenging trial court's elimination of punitive damage claims].) The court's order granting Perez's motion to dismiss, however, does not indicate whether the court, in fact, excluded the 39 days the writ petition was pending in calculating whether the five-year statute under section 583.310 had expired. But assuming that the court did exclude this 39 days—and, based upon our ultimate conclusion that there were no other time periods that should have been excluded under the impossibility exception—the Cross-Complaint was

nonetheless pending for more than five years. Therefore, dismissal of the Cross-Complaint was required, regardless of whether the trial court excluded the time Perez's writ petition was pending in this court.

### III. *Denial of Motion to Enter Judgment on Arbitration Award*

#### A. *The MFAA*

Enacted in 1978, the MFAA was first proposed by the Board of Governors (Board) of the California State Bar two years earlier, and had its roots in the Board's acknowledgment "that disputes concerning legal fees were the most serious problem between members of the bar and the public . . . ." (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 983 [12 Cal.Rptr.3d 287, 88 P.3d 24].) "Recognizing the 'disparity in bargaining power in attorney fee matters which favors the attorney in dealings with infrequent consumers of legal services' [citation], that many clients could not afford hiring additional counsel to litigate fee disputes in the civil courts [citation], and that previous schemes that called for voluntary arbitration were ineffective [citation], the Legislature enacted the MFAA." (*Ibid.*) The MFAA offers protections to "clients as consumers of legal services in general." (*Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034, 1044 [79 Cal.Rptr.2d 567].) Thus, the statute promotes the specific policy of "alleviat[ing] the disparity in bargaining power in attorney fee matters which favors the attorney by providing an effective, inexpensive remedy to a client which does not necessitate the hiring of a second attorney. [Citation.]" (*Manatt, Phelps, Rothenberg & Tunney v. Lawrence* (1984) 151 Cal.App.3d 1165, 1174 [199 Cal.Rptr. 246].)

■ MFAA arbitration is "strictly limited by subject matter." (*Law Offices of Dixon R. Howell v. Valley, supra*, 129 Cal.App.4th at p. 1087.) Client claims for damages based upon attorney malpractice or professional misconduct are expressly excluded. (Bus. & Prof. Code, § 6200, subd. (b)(2); see also *Liska v. The Arns Law Firm* (2004) 117 Cal.App.4th 275, 282 [12 Cal.Rptr.3d 21] ["to keep the proceedings simple and low cost," MFAA arbitration is limited to fee disputes].) But evidence may be introduced at an MFAA arbitration concerning the client's contention of attorney malpractice or other professional misconduct to the extent that such alleged malfeasance may bear on the question of the amount of fees owing by the client to the attorney. (Bus. & Prof. Code, § 6203, subd. (a).)

■ Under Business and Professions Code section 6200, subdivision (c), absent the client's express written agreement, arbitration is voluntary for the client; however, in the event the client elects to arbitrate his or her fee dispute, arbitration is mandatory for the attorney. (*Aguilar v. Lerner, supra*, 32

Cal.4th at p. 984.)[13] In order to protect the client's right to arbitration under the statute, an attorney wishing to pursue a claim for fees must first, prior to or at the time of serving an action—and only *after* a fee dispute has arisen (*Huang v. Cheng* (1998) 66 Cal.App.4th 1230, 1232 [78 Cal.Rptr.2d 550])— send the client a notice advising of its right to arbitration under the MFAA. (Bus. & Prof. Code, § 6201, subd. (a).) If an attorney initiates an action or proceeding against the client for fees, the client may elect to stay the action by requesting arbitration before answering. (Bus. & Prof. Code, § 6201, subds. (b), (c).)

■ The MFAA provides that a client may waive its right to arbitration either by failing to request arbitration within 30 days of receipt of a notice of the right to arbitrate (Bus. & Prof. Code, § 6201, subd. (a)), or by answering a lawsuit initiated by an attorney, where the attorney has provided the client with the requisite notice of the right to arbitrate (*id.*, subd. (b)). A client may also waive fee arbitration by filing an action or other pleading seeking (1) judicial resolution of a fee dispute, or (2) affirmative relief against the attorney for malpractice or other professional misconduct. (*Id.*, subd. (d)(1), (2); *Aguilar v. Lerner, supra,* 32 Cal.4th at p. 987; cf. *Law Offices of Dixon R. Howell v. Valley, supra,* 129 Cal.App.4th at pp. 1094–1095 [MFAA does not provide all instances in which client may be found to have waived arbitration rights].) Arbitration under the MFAA provides the client with an alternative means of resolving fee disputes, "*not one in addition* to traditional litigation." (*Juodakis v. Wolfrum* (1986) 177 Cal.App.3d 587, 593 [223 Cal.Rptr. 95] (*Juodakis*).)

■ The arbitrator or arbitrators of a fee dispute submitted for resolution under the MFAA may "(1) Take and hear evidence pertaining to the proceeding. [¶] (2) Administer oaths and affirmations. [¶] (3) Compel, by subpoena, the attendance of witnesses and the production of books, papers, and documents pertaining to the proceeding." (Bus. & Prof. Code, § 6200, subd. (g); see also Rules Proc. for Fee Arbitrations and Enforcement of Awards by State Bar, rules 27.0 to 40.0, 23 pt. 5 West's Ann. Ct. Rules (2008) pp. 206–212.) A written arbitration award resolving all questions submitted must be signed by all participating arbitrators and served upon each of the parties. (Bus. & Prof. Code, § 6203, subd. (a).)

■ Although an arbitration award is nonbinding unless the parties agree to make the award binding at any time after the fee dispute has arisen (Bus. &

---

[13] "Unless the client has agreed in writing to arbitration under this article of all disputes concerning fees, costs, or both, arbitration under this article shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client. . . ." (Bus. & Prof. Code, § 6200, subd. (c).)

Prof. Code, § 6204, subd. (a)),[14] the award will become final if neither party rejects it within 30 days after the mailing of the award and appropriate statutory notice. (Bus. & Prof. Code, § 6203, subd. (b).) If an action is already pending, the de novo request is filed in that action. (Bus. & Prof. Code, § 6204, subd. (b).) If there is no pending action at the time of the award, the party must initiate an action "in the court having jurisdiction over the amount of money in controversy" within the 30-day time period. (*Id.*, subd. (c).) And—in contrast to judicial arbitration under section 1141.10 et seq., under which express provision is made for a party to seek relief from default under section 473 to vacate an arbitration award entered after no party requested trial de novo within 30 days of its filing (§ 1141.23; Cal. Rules of Court, rule 3.828(a))—once an MFAA fee arbitration award has become final, it cannot be vacated by motion brought under section 473. (*Maynard v. Brandon* (2005) 36 Cal.4th 364 [30 Cal.Rptr.3d 558, 114 P.3d 795] (*Maynard*).)

■ The Board is required to "establish, maintain, and administer a system and procedure for the arbitration" of attorney fee disputes. (Bus. & Prof. Code, § 6200, subd. (a).) In that vein, it must "adopt rules to allow arbitration and mediation of attorney fee and cost disputes . . . to proceed under arbitration and mediation systems sponsored by local bar associations in this state." (*Id.*, subd. (d).) The procedural rules of the local bar associations are reviewed by the Board "to insure that they provide for a fair, impartial, and speedy hearing and award." (*Ibid.*; see generally Rules of Proc. for the Hearing of Fee Arbitrations by the Santa Clara County Bar Assn. (approved by the State Bar Board of Governors: May 29, 1998) <http://www.sccba.com/framemaker.cfm?masthead_dir=legalconsumercontent_dir=legalconsumer&content=feearbitration.cfm> [as of Dec. 19, 2008].)

## B. *Propriety of Denial of Motion to Enter Judgment*

### 1. *Relevant case authority*

Grajales contends that the court erred in denying her motion to enter judgment on the fee arbitration award. She argues that Perez's failure to prosecute the complaint—nonfeasance that resulted in its involuntary dismissal—was a repudiation of his prior request for trial de novo of the arbitration award. As such, the court should have reinstated the fee arbitration

---

[14] "The parties may agree in writing to be bound by the award of arbitrators appointed pursuant to this article at any time after the dispute over fees, costs, or both, has arisen. In the absence of such an agreement, either party shall be entitled to a trial after arbitration if sought within 30 days, pursuant to subdivisions (b) and (c), except that if either party willfully fails to appear at the arbitration hearing in the manner provided by the rules adopted by the board of governors, that party shall not be entitled to a trial after arbitration. . . ." (Bus. & Prof. Code, § 6204, subd. (a).)

award by entering judgment on it.[15] In support of this position, Grajales relies principally on two cases, *Herbert Hawkins Realtors, Inc. v. Milheiser* (1983) 140 Cal.App.3d 334 [189 Cal.Rptr. 450] (*Herbert Hawkins*), and *Corell v. Law Firm of Fox and Fox* (2005) 129 Cal.App.4th 531 [28 Cal.Rptr.3d 310] (*Corell*).

In *Herbert Hawkins*, after referral of the case to judicial arbitration (§ 1141.10 et seq.), and after the rendering of an award in favor of the defendants, the plaintiffs made a timely request for trial de novo. (*Herbert Hawkins, supra*, 140 Cal.App.3d at p. 337.) Prior to a mandatory settlement conference, the plaintiffs filed a voluntary dismissal without prejudice of the action. (*Ibid.*) Because the dismissal was without prejudice, defendants were denied their request for issuance of an abstract of judgment as well as their request for statutory costs and disbursements. (*Ibid.*) They thereafter made a motion for entry of dismissal *with* prejudice, which was denied. (*Ibid.*) The defendants appealed from these orders. (*Ibid.*) The appellate court reversed, holding that permitting the plaintiffs to dismiss their case without prejudice after their rejection of an unfavorable arbitration award would defeat the purpose of the judicial arbitration statutes "of 'expediting and removing complexities from the judicial process relating to small civil claims . . . .' [Citation.] Such a construction of the interrelationship of the relevant statutes produces absurd consequences and promotes mischievous lawyering." (*Id.* at pp. 339–340, fn. omitted.) The court reasoned further, "No party has the right to avoid the judicial arbitration award at their whim, and the party requesting a trial de novo may either proceed with a trial de novo or allow the award to be entered as a judgment, challengeable as provided by section 1286.2 or Judicial Council rules. [Citation.] When parties withdraw requests for a trial de novo or voluntarily dismiss their complaints, *they repudiate their previous election for a trial de novo. This factually restores the repudiating parties to their legal positions before electing the trial de novo, and triggers award finalization under section 1141.20.* Accordingly, we hold a party is not entitled to a voluntary dismissal without prejudice within the judicial arbitration setting merely to avoid an unfavorable arbitration award." (*Id.* at p. 340, fns. omitted, italics added.)

In *Calderon v. Kane* (1995) 36 Cal.App.4th 1663, 1666–1668 [43 Cal.Rptr.2d 480] (*Calderon*), the First District Court of Appeal, Division Five, followed *Herbert Hawkins* in reaching the conclusion that the plaintiffs' voluntary dismissal without prejudice of their suit following their timely

---

[15] In support of her claim that she was entitled to an order confirming the arbitration award, Grajales also offers extensive discussion concerning the merits of the underlying controversy as to whether her contingency fee agreement with Perez was ever amended. As we have noted (see fn. 3, *ante*), the arbitration panel concluded that the agreement was not amended. In any event, we need not address this question, since the issue here is simply whether or not Grajales was entitled to an order confirming the arbitration award and entry of judgment thereon.

rejection of an unfavorable judicial arbitration award constituted a repudiation of that prior de novo request. The court in *Calderon* reasoned, "There is no reason a dissatisfied party should be able to render the entire arbitration proceeding a judicial nullity by the simple procedural tactic of requesting a trial de novo and then dismissing that request." (*Id.* at p. 1667.)

*Kelley v. Bredelis* (1996) 45 Cal.App.4th 1819, 1822 [53 Cal.Rptr.2d 536] (*Kelley*), involved a slightly different circumstance, namely, the plaintiffs' dismissal *with prejudice* of their action after their rejection of an unfavorable judicial arbitration award. The court noted that the plaintiffs, having already had their day in court by participating in the arbitration, "sought a second day in court" by rejecting the award. (*Id.* at p. 1826.) Following the reasoning in *Herbert Hawkins*, the court held that the "plaintiffs did not have an absolute right to dismiss their case. Instead, [the] plaintiffs' request for dismissal resulted in a repudiation of their request for trial de novo and a reinstatement of the arbitration award. Such a reconciliation of the competing interests between the voluntary dismissal statute and the judicial arbitration statutes promotes 'a wise policy rather than mischief or absurdity.' [Citation.] To allow otherwise neither makes good sense nor good law. [¶] . . . Although this case involves a dismissal *with* prejudice while *Herbert Hawkins* involved a dismissal *without* prejudice, we find no significant reason to treat the two types of dismissal differently under the facts of this case." (*Kelley, supra,* at p. 1826.)

In contrast to *Herbert Hawkins, Calderon,* and *Kelley,* the somewhat procedurally convoluted circumstances in *Corell, supra,* 129 Cal.App.4th 531, involved an attorney fee dispute arbitrated under the MFAA. The retainer agreement there provided for binding arbitration of disputes between attorney and client under the Commercial Arbitration Rules of the American Arbitration Association; but it also recognized that the client could elect nonbinding arbitration under the MFAA or binding arbitration under the agreement. (129 Cal.App.4th at p. 533.) After a fee dispute arose, the client pursued arbitration under the MFAA, resulting in the rendering of an arbitration award that the attorneys timely rejected by filing an action. (129 Cal.App.4th at p. 534.) The client requested that the action be stayed so that the matter could proceed with binding arbitration in accordance with the retainer agreement. (*Ibid.*) The court ordered the matter to arbitration to be completed within six months. (*Ibid.*) The arbitration never occurred (*ibid.*), and the attorneys ultimately dismissed the action without prejudice. (*Id.* at p. 535.) The client filed a new action, the attorneys cross-complained for fees under the agreement, and the client demurred, contending that the cross-complaint was an untimely challenge to the arbitration award rendered under the MFAA. (129 Cal.App.4th at pp. 535–536.) The trial court concluded that the attorneys had repudiated their de novo request relative to the fee arbitration award by dismissing the prior action, but it also held that the

parties were required to resolve their dispute with binding arbitration pursuant to the retainer agreement, and it thus struck the client's complaint. (*Id.* at p. 536.)

The appellate court in *Corell* reversed. The court concluded that the reasoning found in *Herbert Hawkins, Calderon*, and *Kelley*—in the context of judicial arbitration—was applicable to arbitration under the MFAA under the facts before it. (*Corell, supra*, 129 Cal.App.4th at p. 537.) The court reasoned, "Like judicial arbitration, MFAA arbitration subserves a legislative and public purpose to apply the relatively informal and inexpensive arbitral process to a class of disputes whose nature merits such facility. [Citation.] And while both systems allow for a trial de novo after an award, both also provide for finality of the award if such further action is not promptly initiated (within 30 days). [Citations.] In both cases, therefore, abandonment of de novo proceedings by the party that has invoked them to supersede the award may well be treated as a retraction of that rejection of the award, rather than as effecting a 'mischievous' [citation] escape from it." (*Id.* at pp. 537–538.) The *Corell* court thus held that "[i]n sum, Fox's dismissal of the fee action, and its conduct thereafter, reflect an attempted evasion of both the mandatory fee arbitration award and the arbitral process as a whole. As in [*Herbert*] *Hawkins, supra*, 140 Cal.App.3d 334, by that dismissal Fox repudiated its request for a trial de novo. The February 6, 2003 award therefore became final and binding, as provided by Business and Professions Code section 6203, subdivision (b)." (*Id.* at p. 538.)

### 2. *Application to dismissal of Perez's complaint*

In this case, we are dealing with circumstances that differ from those found in the four cases discussed above. *Herbert Hawkins, Calderon*, and *Kelley* each involved judicial arbitration. *Corell*, while it concerned arbitration under the MFAA, addressed the effect of a party's voluntary dismissal on a rejected fee award. We are aware of no instances in which a court has addressed the legal effect of an involuntary dismissal of a case following a party's rejection of a fee arbitration award under the MFAA. Despite their procedural differences, we conclude that the principles of the four cases compel the holding here that the involuntary dismissal of the Perez complaint constituted a repudiation of that attorney's prior rejection of the arbitration award. For although three of the cases concerned judicial arbitration, the concept enunciated in *Herbert Hawkins*—that a dismissal may result in a repudiation of the party's prior rejection of an award—applies equally to MFAA arbitration and judicial arbitration. (*Corell, supra*, 129 Cal.App.4th at pp. 537–538.)

Further, while each of the four cases concerned a party's voluntary dismissal of the action, we see no practical distinction between a dismissal

that is voluntary and one that is involuntary based upon a party's failure to diligently prosecute the action. In either case, after the party has rejected the MFAA arbitration award by filing a de novo request, the party effectively repudiates that rejection by causing or permitting the action's dismissal, thereby divesting the court of jurisdiction to decide the controversy. As is true where a plaintiff attempts to avoid the consequences of an unfavorable arbitration award by making a timely de novo request followed by a voluntary dismissal of the action, allowing a party to avoid the adverse consequences of an MFAA arbitration award by failing to prosecute the case to a de novo trial would "produce[] absurd consequences and promote[] mischievous lawyering." (*Herbert Hawkins, supra,* 140 Cal.App.3d at pp. 339–340, fn. omitted.) Although we make no finding as to whether Perez's rejection of the award and the court's later dismissal of the complaint were the product of "mischievous lawyering," it is nonetheless true that were we to find that the arbitration award was not reinstated by the dismissal of the complaint, we would be encouraging the manipulation of the MFAA system.

Our conclusion promotes the MFAA policies of leveling the playing field in attorney-client fee disputes and of providing an effective and inexpensive remedy to the client through arbitration in which the client need not hire a second attorney—policies the Supreme Court has recently reaffirmed. The high court in *Maynard* held that construing the MFAA to permit relief under section 473 where a party fails to make a timely rejection of an arbitration award would not promote the statute's policies because it would (1) undermine the policy of finality of arbitration awards as a result of the parties' allowing them to become binding through the passage of time, (2) lead to additional reliance on courts for fee disputes, (3) require clients to retain additional counsel to litigate collateral (i.e., § 473) issues, and (4) worsen the disparity in bargaining power between attorney and client. (*Maynard, supra,* 36 Cal.4th at p. 377.) The result adopted by the trial court and urged by Perez here, if approved by this court, would likewise have these negative consequences in contravention of the goals and spirit of the MFAA.

Treatment of the involuntary dismissal here as effectively reinstating the rejected MFAA award is also consistent with the Supreme Court's view of the de novo process. Trial de novo under "the MFAA incorporates a procedure analogous for present purposes to a conventional appeal." (*Maynard, supra,* 36 Cal.4th at p. 369.)[16] Since the "dismissal [of an appeal] is the functional equivalent of affirmance" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2008) ¶ 5:259, p. 5-83), there is logic to the

---

[16] We of course acknowledge that, unlike traditional appeals from trial court judgments, after rejection of an award rendered under the MFAA, the "trial after arbitration is conducted de novo, essentially as if no arbitration has occurred. [Citations.]" (*Maynard, supra,* 36 Cal.4th at p. 373.)

conclusion that the dismissal of Perez's complaint resulted in the reinstatement or affirmance of the arbitration award.

 Furthermore, it would make no practical sense to conclude that an arbitration award under the MFAA is and remains a nullity after it is rejected, regardless of whether the dissatisfied party follows through on its request for trial de novo. "[T]he only way to stop an arbitration award from becoming a final judgment is to either settle the case, or go through a trial de novo. If a party fails to do either, then he or she has had his or her day in court." (*Kelley, supra*, 45 Cal.App.4th at p. 1827.)

Perez, however, argues that Grajales waived the right to have judgment entered on the arbitration award. He asserts that the filing of the cross-complaint by Grajales constituted such waiver. We disagree.[17]

As we have noted (see pt. III.A., *ante*), a client may waive its right to arbitration (1) by failing to request arbitration within 30 days of receipt of a notice of the right to arbitrate (Bus. & Prof. Code, § 6201, subd. (a)); (2) by failing to request arbitration before answering a lawsuit filed by an attorney who has provided the client with notice of its arbitration rights (*id.*, subd. (b)); (3) by filing an action or other pleading seeking judicial resolution of a fee dispute (*id.*, subd. (c)); or (4) by filing an action or other pleading seeking affirmative relief against the attorney for malpractice or other professional misconduct (*ibid.*).[18] None of those circumstances occurred here. In fact, Grajales asserted her right to have her fee claim arbitrated under the MFAA by making a proper request to arbitrate the fee controversy. (Bus. & Prof. Code, § 6200, subd. (c); Rules Proc. for Fee Arbitrations and Enforcement of Awards by State Bar, rule 15.0, 23 pt. 5 West's Ann. Ct. Rules (2008) p. 199.) She did so without bringing any action against Perez seeking judicial resolution of the fee dispute or seeking other affirmative relief relative to his legal representation of her; thus there was no waiver under Business and Professions Code section 6201, subdivision (c).

Perez contends that under *Juodakis, supra*, 177 Cal.App.3d 587, Grajales waived her arbitration rights under the MFAA. *Juodakis*, however, involved

---

[17] Perez initially asserts in his brief that "*for all practical purposes, Grajales has 'defaulted' on appeal regarding the statutory waiver issue.*" (Original italics.) We reject that contention. Grajales did in fact address briefly this issue in her opening brief. She disputed the claim of waiver, arguing that, had she sued Perez before arbitrating her fee claim, Perez's statutory waiver claim would have merit. Because the cross-complaint was a compulsory pleading filed only after Perez rejected the arbitration award, there was no waiver.

[18] We recognize that the MFAA does not codify all instances in which client may be found to have waived arbitration rights. (*Law Offices of Dixon R. Howell v. Valley, supra*, 129 Cal.App.4th at pp. 1094–1095.) However, Perez does not argue, and the record does not support an assertion, that there was a nonstatutory waiver by Grajales here.

far different circumstances than those here. In *Juodakis*, the client requested arbitration of a fee dispute with his attorney in accordance with the MFAA. (177 Cal.App.3d at p. 590.) The arbitration commenced but was not completed, the hearing apparently having been continued for a further hearing. (*Ibid.*) Before an arbitration award was rendered, the client filed suit against the attorney for malpractice and other relief; the action arose out of the same relationship that gave rise to the fee dispute. (*Ibid.*) Seven months later, the arbitrators rendered an award, which the client petitioned the court to confirm. (*Ibid.*) The attorney brought a cross-motion to vacate the arbitration award, which the trial court granted. (*Id.* at pp. 590–591.) The appellate court affirmed, concluding that the client, by filing suit against his attorney before the rendering of the arbitration award, had waived his "right to request or maintain arbitration" under the MFAA (Bus. & Prof. Code, § 6201, subd. (d)). (*Juodakis, supra,* at pp. 591–593.) The court held that, regardless of the client's claim that he did not intend to waive MFAA arbitration, his conduct of filing suit while the arbitration proceeding was pending constituted a statutory waiver. (177 Cal.App.3d at p. 592.)

Here, in contrast to *Juodakis*, Grajales had requested arbitration, an award had been rendered, and that award had been rejected by Perez before Grajales filed her cross-complaint. Perez points to no conduct occurring before his rejection of the award that suggests that Grajales waived her right to proceed with arbitration under the MFAA. Because Perez's rejection of the arbitration award resulted in the case being in the procedural posture "essentially as if no arbitration had occurred" (*Maynard, supra,* 36 Cal.4th at p. 373), at the time Grajales filed her initial cross-complaint, effectively, there was no longer an MFAA arbitration left to "maintain"; thus there was thus no statutory waiver under Business and Professions Code section 6201, subdivision (d).

Moreover, we reject Perez's claim that Grajales waived MFAA arbitration because she filed a cross-complaint against him before seeking to confirm the arbitration award. He argues—without citation of authority—that the step of confirming the arbitration award is a continuation of the process of "maintain[ing] arbitration" within the meaning of Business and Professions Code section 6201, subdivision (d). Given the fact that Perez's rejection of the award in January 2002 left Grajales in the position that she could not petition to confirm that award, we find no merit to Perez's argument. Thus, Grajales did not waive her rights under the MFAA arbitration award by failing to file a petition to confirm—the arbitration award rejected here by Perez as a matter of law could not be confirmed at that stage of the proceedings.[19]

---

[19] Perez also contends that it was proper for the trial court to deny the motion to confirm the arbitration award because the arbitrators exceeded their authority in issuing an award in Grajales's favor, where her claim was barred by the statute of limitations. In making this argument, he acknowledges that he failed to raise it below. Given that there is no evidence that

■ Accordingly, we conclude that the court's dismissal of Perez's complaint seeking trial de novo of the underlying fee dispute effectively repudiated his rejection of the arbitration award. This conclusion is supportive of the policies of the MFAA of providing "an effective, inexpensive remedy to a client . . . ." (*Manatt, Phelps, Rothenberg & Tunney v. Lawrence, supra,* 151 Cal.App.3d at p. 1174.) We readily acknowledge that in this instance, the arbitration process, including the five-year delay resulting from Perez's abortive challenge to the arbitration award, was neither effective nor inexpensive. However, the alternative result urged by Perez here would (1) permit the attorney to prevail in a fee dispute without an adjudication in his favor on the merits, (2) nullify the only decision in which the merits of the controversy were considered, (3) result in potential ambiguity by placing the parties back in the position they were in before arbitration was commenced, and (4) ultimately subvert the MFAA process by precluding the client from obtaining *any* recourse against her attorney where her claim was that she was substantially overcharged. (Cf. *Juodakis, supra,* 177 Cal.App.3d at p. 593 [arbitration under the MFAA and litigation are alternative methods for a client to resolve fee disputes].)

Perez having repudiated the award, Grajales was entitled to apply for and obtain an order confirming the arbitration award and a judgment entered on such confirmation of the award under Business and Professions Code section 6203, subdivision (b),[20] and under (Code Civ. Proc.) sections 1285 and 1287.4.[21] We therefore reverse the court's order denying Grajales's motion to confirm the arbitration award and to enter judgment.

the court based its decision denying Grajales's motion to confirm the arbitration award on this theory, and because appellate courts generally decline to consider theories of the parties raised for the first time on appeal (*McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618 [74 Cal.Rptr.2d 101]), we decline to address Perez's argument.

[20] "Even if the parties to the arbitration have not agreed in writing to be bound, the arbitration award shall become binding upon the passage of 30 days after mailing of notice of the award, unless a party has, within the 30 days, sought a trial after arbitration pursuant to Section 6204. If an action has previously been filed in any court, any petition to confirm, correct, or vacate the award shall be to the court in which the action is pending, and may be served by mail on any party who has appeared, as provided in Chapter 4 (commencing with Section 1003) of Title 14 of Part 2 of the Code of Civil Procedure; otherwise it shall be in the same manner as provided in Chapter 4 (commencing with Section 1285) of Title 9 of Part 3 of the Code of Civil Procedure. If no action is pending in any court, the award may be confirmed, corrected, or vacated by petition to the court having jurisdiction over the amount of the arbitration award, but otherwise in the same manner as provided in Chapter 4 (commencing with Section 1285) of Title 9 of Part 3 of the Code of Civil Procedure." (Bus. & Prof. Code, § 6203, subd. (b).)

[21] "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award. The petition shall name as respondents all parties to the arbitration and may name as respondents any other persons bound by the arbitration award." (§ 1285.) "If an award is confirmed, judgment shall be entered in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all the provisions of law

## DISPOSITION

The order dismissing Grajales's Cross-Complaint is affirmed. The order denying Grajales's motion to confirm the fee arbitration award and enter judgment thereon is reversed. The matter is remanded to the trial court with directions to enter an order granting the motion to confirm the fee arbitration award and to enter judgment on that award in favor of Grajales. Costs on appeal are awarded to Grajales.

Mihara, P. J., and McAdams, J., concurred.

A petition for a rehearing was denied January 20, 2009, and respondent's petition for review by the Supreme Court was denied March 18, 2009, S170133.

---

relating to, a judgment in a civil action of the same jurisdictional classification; and it may be enforced like any other judgment of the court in which it is entered, in an action of the same jurisdictional classification." (§ 1287.4.)