Filed 8/30/24  Fugate v. PeopleWhiz CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICK FUGATE et al.,<br><br>     Plaintiffs and Respondents,<br><br>v.<br><br>PEOPLEWHIZ, INC.,<br><br>     Defendant and Appellant | A168050<br><br>(Alameda County Super. Ct. No. 23CV026212) |

**MEMORANDUM OPINION**[1]

After respondents Rick Fugate and Connie Debates filed a putative class action lawsuit alleging that appellant PeopleWhiz, Inc., violated the Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.;[2] the ARL) and two other statutes, PeopleWhiz moved to compel arbitration.  Relying on *Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444 (*Sellers*), the trial court denied the motion, concluding that under the circumstances of the case, a

---

[1] We resolve this case by memorandum opinion.  (Cal. Stds. Jud. Admin., § 8.1.)  We do not belabor "the facts of the case and its procedural history" because our opinion is unpublished, and the parties know or should know those facts.  (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851.)

[2] All further statutory references are to the Business and Professions Code, unless otherwise indicated.

reasonably prudent consumer "would have no reason to believe they [were] agreeing to binding arbitration" under the purported "sign-in wrap" agreement the PeopleWhiz website displayed to Fugate and Debates.[3]  In this appeal, PeopleWhiz contends the trial court erred in denying the motion to compel arbitration.  Reviewing that claim de novo, we reject PeopleWhiz's argument and affirm the order accordingly.  (*Id.* at p. 462.)

As PeopleWhiz rightly observes, California law generally favors the enforcement of arbitration agreements.  (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.)  But for an arbitration agreement to be enforced, it must first *exist*.  And because general contract principles apply to sign-in wrap agreements — a point made in PeopleWhiz's opening brief — no arbitration agreement between the parties to this appeal could have existed without their mutual assent.  (Civ. Code, § 1550.)  Thus, if the trial court correctly concluded that Fugate and Debates "did not agree to [PeopleWhiz's] terms of use," then no valid arbitration agreement existed.  For that reason, our sole inquiry here concerns whether the parties manifested mutual assent.

"[I]n order to establish mutual assent for the valid formation of an internet contract, a provider must first establish the contractual terms were presented to the consumer in a manner that made it apparent the consumer was assenting to those very terms when checking a box or clicking on a button." (*Sellers*, *supra*, 73 Cal.App.5th at p. 461.)  "[T]he full context of the

---

[3] " ' "*Sign-in-wrap*" agreements are those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service.  While a link to the separate agreement is provided, users are not required to indicate that they have read the agreement's terms before signing up.' " (*Sellers*, *supra*, 73 Cal.App.5th at p. 464.)  In other words, the consumer is not purportedly bound by clicking a button to expressly agree with certain terms, but "by clicking some *other* button."  (*Id.* at p. 471.)

2

transaction is critical to determining whether a given textual notice is sufficient to put an internet consumer on inquiry notice of contractual terms." (*Id.* at p. 477.) Where, as here, the contractual terms at issue would limit the consumer's ability to address alleged ARL violations, the full context of the transaction includes the requirements of the ARL and that law's "stated intent to protect consumers from unwittingly being entered into automatically recurring memberships." (*Id.* at p. 480.) In turn, the ARL requires that the terms of a continuous offer be presented "in a clear and conspicuous manner . . . ." (§ 17602, subd. (a)(1).) " 'Clear and conspicuous' . . . means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (§ 17601, subd. (c).)

Here, the terms of the continuous offer were embedded as a hyperlink in PeopleWhiz's "Create Account" page. [4] In the space underneath the button consumers could click to create an account, there appears the following text: "Have An Account? Login >>." Below that text is the purported sign-in wrap

---

[4] In its opening brief, PeopleWhiz contends that "users are required to accept [the] terms of use on two separate occasions: once while creating an account, and then again when purchasing a subscription" on the checkout page. But as Fugate and Debates note in their brief, PeopleWhiz in the proceedings below expressly disclaimed the notion that "consent to the Terms of Use occurred on the checkout page . . . ." (Italics omitted.) To whatever extent PeopleWhiz seeks to argue here that the requisite mutual assent was manifested at the checkout stage, that argument is forfeited. (See *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591–592.) In the alternative, if the checkout-page evidence is offered merely for the purpose of establishing the full context of the transaction that occurred on the "Create Account" page, we deem it irrelevant to that inquiry: The checkout page is presented to the consumer *after* the "Create Account" page and contained no hyperlink to the terms, so it can have no bearing on what that consumer was assenting to when they initially clicked "Create Account."

agreement: "By clicking on the 'create account' button above, you consent, acknowledge, and agree to our Terms of Use Agreement, Privacy Policy and provide express 'written' consent authorizing PeopleWhiz and Network partners to contact you via telephone, mobile device (including SMS and MMS – charges may apply) and/or email." Both "Terms of Use" and "Privacy Policy" were hyperlinks set in light blue font.

Neither the paragraph nor the embedded hyperlinks were "clear and conspicuous." (§ 17602, subd. (a)(1).) Compared to the surrounding text, they were not in "larger type"; the paragraph was in smaller type and the embedded hyperlinks were the same size as the rest of the paragraph. (§ 17601, subd. (c).) There was no contrasting type or font, and neither the paragraph nor the embedded hyperlinks were "set off from . . . surrounding text of the same size by symbols or other marks." (§ 17601, subd. (c).) In its reply, PeopleWhiz argues that the "words 'Terms of Use' are distinguished from the rest of the text by the use of capitalization and blue font." But "Terms of Use" is not capitalized in any way that distinguishes it from the rest of the text because the same mode of capitalization is applied on the same page to several other phrases, such as: "Save Your Progress," "No Spam," "Our Goal is 100% Satisfaction," "Generating Report," "Almost Done." Similarly, although the hyperlinks appeared in blue, that color choice could not "clearly call[] attention to the language" on a page where at least three other terms are cast in the same color. (§ 17601, subd. (c).)

Moreover, PeopleWhiz's reliance on *Keebaugh v. Warner Bros. Ent. Inc.* (9th Cir. 2024) 100 F.4th 1005 (*Keebaugh*) is misplaced on this point of conspicuous notice. As *Keebaugh* explained, "the 'clear and conspicuous notice' requirement of California's ARL is different and distinct from the requirement" set forth in *Berman v. Freedom Fin. Network, LLC* (9th Cir.

4

2022) 30 F.4th 849, 856, "that sign-in wrap agreements provide 'reasonably conspicuous notice of the terms.' " (*Keebaugh*, at p. 1019, fn. 5.) In *Keebaugh*, the ARL was inapplicable, so the case was resolved under the "reasonably conspicuous" requirement. (*Id.* at p. 1018.) In sum, the textual notice given by PeopleWhiz on the "Create Account" page failed to meet the "clear and conspicuous" requirement of the ARL.

As for the rest of the transaction's full context, it is of little help to PeopleWhiz. In the pages the consumer had to click through to reach the "Create Account" page, there is no indication that the consumer would be entering an ongoing relationship. In fact, two screens before the "Create Account" screen is a page entitled "User Agreement. There, the consumer must click a box to acknowledge the sensitive nature of the material and agree to use such material responsibly before gaining access to the report. A consumer would have no reason to believe the terms of use on the "Create Account" screen would differ from the "User Agreement" on the earlier screen. For those reasons, we see no error in the trial court's conclusion that "a reasonably prudent consumer would" not "have expected an ongoing relationship with" PeopleWhiz. (See *Sellers*, *supra*, 73 Cal.App.5th at pp. 482–483.)

Finally, the remainder of PeopleWhiz's analysis, which relies on state cases and nonbinding federal cases distinguished by their lack of any ARL claim, is not persuasive in this context. (See, e.g., *Oberstein v. Live Nation Entm't, Inc.* (9th Cir. 2023) 60 F.4th 505, and *B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931.) Under these facts, we are mindful that "[e]nforcing a mandatory arbitration provision that includes a class action waiver based on textual notices — which are less conspicuous than the statutory notice requirements governing Plaintiffs' underlying

5

claims — would permit [PeopleWhiz] to end-run around legislation designed to protect consumers in these specific transactions." (*Sellers, supra,* 73 Cal.App.5th at p. 479.)

## DISPOSITION

We affirm.


DOUGLAS, J.*


We concur:


BROWN, P.J.
GOLDMAN, J.

*Fugate et al. v. PeopleWhiz, Inc.* (A168050)

---

*Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.