Filed 3/11/14  P. v. Williams CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B249821 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA400718) |
| v. | |
| RANDEE WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Yun K. Lee and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Randee Williams was convicted by jury of four felonies: (1) unlawful discharge of a firearm with gross negligence in count 1 (Pen. Code, § 246.3, subd. (a));[1] (2) possession of a firearm by a felon in count 2 (§ 29800, subd. (a)(1)); (3) carjacking in count 3 (§ 215, subd. (a)), with the additional finding defendant used a deadly or dangerous weapon (§ 12022, subd. (b)(2)); and (4) assault with a deadly weapon in count 5 (§ 245, subd. (a)(1)).[2]

In a separate proceeding, the trial court found defendant suffered a prior serious or violent felony conviction (§ 667, subd. (a)(1)) and a prior conviction under the three strikes law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)). The court sentenced defendant to 29 years 4 months in state prison.

In this timely appeal, defendant contends the trial court: (1) violated his right to confront witnesses by admitting the preliminary hearing testimony of the alleged carjacking victim in count 3; and (2) abused its discretion and violated his right to due process of law by denying his motion to sever the charges in counts 3 and 4 from the offenses charged in counts 1, 2, and 5. We affirm.

## FACTS[3]

**Count 4—Assault with a Deadly Weapon on Paris Covington**

Defendant had a casual romantic relationship with Covington on July 2, 2012. Covington lives in Van Nuys with her mother, who owns a black BMW. Covington was home that morning with her friend, Latrelle, and Latrelle's baby. Defendant arrived at

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] The jury found not true the allegation in count 3 that defendant used a firearm in the commission of the carjacking and found defendant not guilty of a separate violation of section 29800, subdivision (a)(1) in count 4.

[3] For clarity, we do not address the charges in chronological or numerical order.

2

Covington's house at around 8:00 a.m. After ongoing bickering between Covington, defendant, and Latrelle, Covington told defendant to leave and threatened to call the police, but defendant stayed and the arguing continued. Covington eventually took refuge in a bedroom, but defendant broke in through the locked door and struck Covington, who jumped out of the bedroom window.

Covington called 911 as she ran down the driveway, providing her address to the operator and identifying the car driven by defendant as a Volkswagen (the same type of car that had been carjacked by defendant from Sarai H. on June 24, 2012, as charged in count 3). Covington was struck and knocked to the ground by the Volkswagen as she ran down the street, causing injuries to her arm, hip, and pelvis area.[4]

Covington ran to the home of her neighbor, Steve Macauley, who had been watching the incident through a window in his home and observed the Volkswagen chasing after Covington. Macauley saw Covington go down and believed she had been hit by the car, although he did not see actual contact. Defendant turned the car around and drove off in the opposite direction. Covington was crying and screaming that defendant hit her with a car when she arrived at Macauley's house. She was taken to the hospital by ambulance. Covington told the police and the 911 operator that defendant hit her with the car.

**Counts 1 and 2—Unlawful Discharge of a Firearm and Felon in Possession of a Firearm**

Defendant and Covington went to the home of Sylvester Williams, defendant's grandfather, on June 2, 2012. Defendant and the grandfather frequently argued, including that night. The grandfather told Officer Edgar Muro that as defendant and Covington were leaving the residence, Covington asked why defendant did not find another place to

_____

[4] Covington testified at trial that she fell without being struck by the Volkswagen. The jury's verdict reflects its rejection of her recantation of her statements to the police and her call to 911.

live.[5]  Defendant has a short temper and became upset, pulled out a handgun and fired approximately six shots into the air.  Defendant and Covington left in a black BMW, the type of car owned by Covington's mother.  Officer Jose Lara responded to the call with Officer Muro and was directed by the grandfather to a location in front of the residence, where he found six spent casings on the street.[6]

Defendant stipulated he had suffered prior felony convictions for purposes of the felon with a firearm counts.

**Count 5—Carjacking of Sarai H.[7]**

Sarai has a six-month-old child fathered by defendant.  On June 25, 2012, Sarai told Officer Timothy Hope that on the evening of June 24, she met with defendant, they went to a store, and then returned to her apartment.  Defendant asked if he could take her car, which she refused because she needed it.  Defendant pulled out a gun and waved it around while screaming at her.  Sarai was scared for her life and that of her baby, so she said, "Take what you want.  Take the car."  Defendant took the keys to her Volkswagen and left.  She waited eight hours to call the police out of fear for herself and her baby.[8]

---

[5]  Covington admitted being with defendant at his grandfather's house and witnessing their argument, but she was uncertain of the date and did not recall any shooting.

[6]  The grandfather recanted his statements to the officers in his trial testimony.  He testified at trial that he was under the influence of alcohol that night and had merely heard shots as defendant was leaving.  He denied seeing defendant with a gun or firing a gun, and he further denied directing the officers to the location where bullet casings were recovered.

[7]  As discussed more fully below, Sarai did not testify at trial, but her prior testimony from the preliminary hearing was admitted into evidence.

[8]  Sarai also recanted her statements to the police in her preliminary hearing testimony.  She did not see a gun, according to her testimony, and the police must have

4

She did not get the car back until July 3, one day after the assault with a deadly weapon on Covington.

**Defense**

Defendant testified in his own behalf. He denied firing shots at his grandfather's house, although he did hear shots as he was leaving the area with Covington. Sarai gave him permission to take her car so he could give his cousin a ride home. He returned the car to her the next day, but after that, he borrowed it occasionally and did have it on July 2 at Covington's house. Defendant agreed that he did argue with Covington, break the door, and slap her, and that she jumped out the bedroom window. He chased her down the sidewalk and she fell. He then got into the Volkswagen and left, but he did not chase her in the car. No gun was ever recovered from him. Defendant admitted suffering prior felony convictions for purposes of the felon in possession of a firearm charge.

## DISCUSSION
### I

Defendant argues the trial court erred in permitting the prosecution at trial to introduce the preliminary hearing testimony of Sarai. Defendant contends the prosecution did not exercise due diligence in obtaining Sarai's presence at trial, as evidenced by the failure to begin looking for her until six working days prior to the scheduled start of trial and not making any further effort to locate her in the ten days before her prior recorded testimony was read to the jury. Defendant also faults the prosecution's failure to utilize a treaty with Spain to obtain Sarai's presence at trial.

---

misunderstood what she said due to a language problem. She allowed defendant to take her car, but he did not return it as expected.

5

Defendant asserts that introduction of her preliminary hearing testimony resulted in a violation of the Sixth Amendment right to confront witnesses for the prosecution.

**Constitutional Principles of Confrontation of Witnesses**

The federal and state Constitutions guarantee a criminal defendant the right to confront the prosecution's witnesses. (U.S. Const., 6th Amend.; Cal. Const., art. 1, § 15.) "Although important, the constitutional right of confrontation is not absolute. (*Chambers v. Mississippi* [(1973)] 410 U.S. [284,] 295; [*People v.*] *Cromer* [(2001)] 24 Cal.4th [889,] 897 [(*Cromer*)].)" (*People v. Herrera* (2010) 49 Cal.4th 613, 621 (*Herrera*).) There is a traditional exception to the requirement of confrontation where it is shown the witness is unavailable and was subject to cross-examination in a previous judicial proceedings against the same defendant. (*Ibid.*; *Cromer*, *supra*, at p. 897.) "Pursuant to this exception, the preliminary hearing testimony of an unavailable witness may be admitted at trial without violating a defendant's confrontation right. (*People v. Seijas* (2005) 36 Cal.4th 291, 303.)" (*Herrera*, *supra*, at p. 621.)

Evidence Code section 1291, subdivision (a)(2), codifies the constitutional principle by providing that such former testimony "is not made inadmissible by the hearsay rule if 'the declarant is unavailable as a witness,' and '[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing.'" (*Herrera*, *supra*, 49 Cal.4th at p. 621.) "A witness who is absent from a trial is not 'unavailable' in the constitutional sense unless the prosecution has made a 'good faith effort' to obtain the witness's presence at the trial. (*Barber v. Page* (1968) 390 U.S. 719, 724-725 (*Barber*).)" (*Id.* at p. 622.)

**Standard of Review**

Our Supreme Court has held that "appellate courts should independently review a trial court's determination that the prosecution's failed efforts to locate an absent witness are sufficient to justify an exception to the defendant's constitutionally guaranteed right of confrontation at trial." (*Cromer*, *supra*, 24 Cal.4th at p. 901.) "As indicated, to establish unavailability, the prosecution must show that its efforts to locate and produce a witness for trial were reasonable under the circumstances presented. (*Ohio v. Roberts* [(1980)] 448 U.S. [56,] 74[, overruled on other grounds in *Crawford v. Washington* (2004) 541 U.S. 36, 67]; *People v. Smith* (2003) 30 Cal.4th 581, 609 (*Smith*).) We review the trial court's resolution of disputed factual issues under the deferential substantial evidence standard (*Cromer*, *supra*, 24 Cal.4th at p. 902), and independently review whether the facts demonstrate prosecutorial good faith and due diligence (*id.* at pp. 902-903)." (*Herrera*, *supra*, 49 Cal.4th at p. 623.)

**Background**

Sarai testified at defendant's preliminary hearing on September 20, 2012. Defendant announced ready for trial on December 14, and again indicated trial readiness on December 24. Trial proceedings commenced on December 28, and the first witness testified on January 4, 2013. The hearing on the prosecutor's request to admit Sarai's preliminary hearing testimony was held midtrial on January 8, 2013.

District Attorney Investigator Rochelle Plue testified that she was assigned to locate Sarai and serve a subpoena on her. She first reviewed records in criminal and public record data bases, including national, state, and local records. She checked for arrest history, warrants, probation and parole records, weapon ownership, restraining orders, and other registrant records including the Department of Motor Vehicles. She also reviewed utility and credit records, all of which indicated an address in West Los Angeles.

7

On December 18, 2012, Investigator Plue went to the address for the first time to serve a subpoena for the December 24 trial date. There was no answer at the door of the apartment. She spoke to other occupants of a nearby apartment who said they recognized the witness and thought she lived there. They said there was no on-site apartment manager.

Investigator Plue returned to the apartment on December 20 and again on December 27. There was no answer at the door. She attempted to call Sarai's telephone number, but it went straight to voicemail.

On December 28, Investigator Plue went to the apartment for the last time. She spoke to a woman in the apartment who said she was an exchange student. The woman said Sarai did live in the apartment but was currently in Spain.[9] It appeared the woman and Sarai were doing a residence exchange. The woman did not know when Sarai was returning, but the woman was leaving in approximately one month and expected Sarai would return after that.

Investigator Plue contacted the Department of Homeland Security and the Division of Customs and Border Patrol. Agency records indicated Sarai traveled from O'Hare Airport to Madrid on December 8, 2012,[10] and there was no indication that she had returned. Records indicated that Sarai was born in Spain.

Defense counsel argued the prosecution was on notice from the preliminary hearing that Sarai was recalcitrant and hostile but waited until six days before trial to secure her attendance and made no effort to check within the last ten days to see if she had returned to the country. The prosecution had not carried its burden of demonstrating

---

[9] Based on a defense objection that the woman's statement that Sarai was in Spain was hearsay, the trial court admitted the statement, but not for the truth of the matter asserted.

[10] Investigator Plue at first testified that Sarai had left for Spain in August 2012, but upon reviewing the records, corrected her testimony to reflect Sarai departed on December 8, 2012.

the necessary untiring efforts in good earnest required to establish unavailability under Evidence Code section 240.

The prosecutor argued there is no obligation to exhaust every potential avenue for due diligence. He contended the prosecution made a reasonable effort by verifying a valid address, but Sarai was not there. After the investigator spoke with the exchange student, she checked records from Homeland Security, which show Sarai left the country on December 8 and there was no return date.

The trial court noted that Sarai testified at the preliminary hearing, largely recanting her statements to the police, and she was impeached with her prior statements. The officer who heard Sarai's prior statements would testify at trial and be subject to cross-examination. Defense counsel argued the prosecution's efforts took place during the holiday season and the prosecution was aware defendant would not waive the statutory time for trial. He asserted that Sarai could have been served with a subpoena had the prosecution started weeks sooner.

The trial court stated that all indications are that Sarai is in another country and unavailable. Although the court felt the issue was close, it ruled the prosecution had shown a substantial effort sufficient to establish due diligence.

**Analysis**

There is no dispute Sarai testified at defendant's preliminary hearing and was subject to cross-examination. The only issue is whether she was unavailable as defined in the Confrontation Clause jurisprudence. Our independent review of the facts as determined by the trial court leads to the conclusion the prosecution satisfied its burden of establishing due diligence in attempting to secure Sarai's presence at trial.

The record establishes that Sarai left the country before the parties announced ready for trial, and weeks before her testimony would have been presented. The prosecution utilized all the state and federal data available and concluded she lived in an apartment which an investigator visited four times shortly before trial. The evidence

9

unmistakably shows that Sarai was not at her apartment and most likely was out of the country. There was no evidence of her current whereabouts. These facts are sufficient to establish that Sarai was unavailable, could not be located, the prosecution used due diligence in attempting to secure her attendance, and introduction of her preliminary hearing testimony did not violate the state or federal constitutional right to confront witnesses.

Defendant contends that because Sarai recanted her incriminatory statements against defendant in her testimony at the preliminary hearing, the prosecution was on notice that she might make herself unavailable for trial and earlier efforts to subpoena her were required. Contrary to defendant's argument, the prosecution had no apparent reason to suspect Sarai might make herself unavailable at trial. If anything, the prosecution could reasonably assume Sarai would be available for trial so she could try again to undermine the prosecution, just as she had done at the preliminary hearing. Sarai had communicated with authorities at the time of the carjacking, and although she recanted the incriminating portion of her statements at the preliminary hearing, she did appear and testify. The prosecution is not obligated, under normal circumstances, to make periodic check of every material witness. (*People v. Fuiava* (2012) 53 Cal.4th 622, 676-677 (*Fuiava*); *Herrera*, *supra*, 49 Cal.4th at p. 630; *People v. Wilson* (2005) 36 Cal.4th 309, 342 (*Wilson*).)

Defendant also argues that the prosecution did not attempt to subpoena Sarai until December 18, 2012, which was too close to the date of trial. We disagree. Certainly "the timing and competence of the prosecution's efforts to locate the absent witness within the jurisdiction are important factors in measuring good faith and due diligence [citations] . . . ." (*Herrera*, *supra*, 49 Cal.4th at pp. 630-631; *Wilson*, *supra*, 36 Cal.4th at pp. 341-342; *Cromer*, *supra*, 24 Cal.4th at pp. 903-904.) Records indicate Sarai left for Spain on December 8, 2012, six days before defendant announced ready for trial on December 14, weeks before the last day to bring defendant to trial under section 1382. (*Fuiava*, *supra*, 53 Cal.4th at pp. 676-677 [search for witness reasonably commenced two weeks before the start of trial].) Even had the prosecution started its attempt to subpoena Sarai on the

first day defendant announced ready for trial, she would have already been gone, and the efforts would have been futile. (*Herrera*, *supra*, at pp. 630-631 [where prosecution began its search for a witness four or five days before trial, and witness had been deported months earlier, any prosecution efforts would have been futile].)

Defendant argues the prosecution did not go back to Sarai's apartment to see if she had returned between the time of Investigator Plue's last visit on December 28, 2012, and the investigator's testimony at the hearing to establish due diligence on January 8, 2013. Investigator Plue testified the federal records did not indicate Sarai had returned to the country, and the trial court reasonably concluded she had not. "'That additional efforts might have been made or other lines of inquiry pursued does not affect this conclusion. [Citation.] It is enough that the People used reasonable efforts to locate the witness.' (*People v. Cummings* (1993) 4 Cal.4th 1233, 1298.)" (*Wilson, supra,* 36 Cal.4th at p. 342; see also *Hardy v. Cross* (2011) ___ U.S. ___ [132 S.Ct. 490, 495, 182 L.Ed.2d 224] ["when a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence [citation], but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising"].)

Defendant contends, for the first time on appeal, that the prosecution made no attempt to determine whether Sarai was subject to compulsory attendance through the Treaty on Mutual Assistance in Criminal Matters between the United States of America and the Kingdom of Spain. This contention is forfeited, as it was not raised in the trial court, and the parties therefore did not litigate the applicability of the treaty. (See *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 [reviewing courts ordinarily will not consider claims made for the first time on appeal, and such claims "are generally deemed forfeited"].) The suggestion that invoking the treaty would have secured Sarai's attendance in a timely fashion is entirely speculative, because as argued by defense counsel at the hearing on due diligence, the trial court had no evidence Sarai was actually in Spain at that time.

11

## II

Defendant's second and final contention is that the trial court erred in denying his motion to sever counts 3 (carjacking) and 4 (possession of a firearm by a felon) from counts 1, 2, and 5. Defendant concedes joinder of the five counts was permissible under section 954, which provides in part that "[an] accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." Severance was required, defendant contends, because the carjacking count was weak compared to the others but carried a severe penalty, there was insignificant cross-admissibility of evidence, the jury was not properly admonished that one count could not be used to convict on another. The result of the trial court's ruling was a trial that was grossly unfair.

Defendant, representing himself, made a motion to sever when his case was pending before Judge James Brandlin. The Attorney General correctly pointed out in the Respondent's Brief that although defendant repeatedly raised the issue of joinder during the trial, the record on appeal did not include a reporter's transcript of defendant's original motion before Judge Brandlin, and the contention should therefore summarily be rejected. Counsel for defendant subsequently filed a motion to augment the record with the transcript of the hearing held by Judge Brandlin. We granted defendant's motion to augment, and the record is therefore complete for review of the contention on the merits.

**Standard of Review**

"When, as here, the statutory requirements for joinder are met, a defendant must make a clear showing of prejudice to establish that the trial court abused its discretion in denying the defendant's severance motion. (*People v. Marshall* (1997) 15 Cal.4th 1, 27;

*People v. Price* (1991) 1 Cal.4th 324, 388.)" (*People v. Mendoza* (2000) 24 Cal.4th 130, 160-161; see also *People v. Soper* (2009) 45 Cal.4th 759, 773 (*Soper*).) "We review a trial court's denial of a severance motion for abuse of discretion based on the facts as they appeared when the court ruled on the motion. (*People v. Hardy* (1992) 2 Cal.4th 86, 167.) If we conclude the trial court abused its discretion, reversal is required only if it is reasonably probable that the defendant would have obtained a more favorable result at a separate trial. (*People v. Coffman and Marlow*, [(2004)] 34 Cal.4th [1,] 41; *People v. Keenan* (1988) 46 Cal.3d 478, 503.)" (*People v. Lewis* (2008) 43 Cal.4th 415, 452.) "Even if the ruling was correct when made, we must reverse if defendant shows that joinder actually resulted in 'gross unfairness,' amounting to a denial of due process. (*People v. Johnson* (1988) 47 Cal.3d 576, 590.)" (*People v. Arias* (1996) 13 Cal.4th 92, 127.)

**Analysis**

Defendant has not shown that the trial court abused its discretion in denying severance of counts 3 and 4 from the remainder of the charges, or that the resulting trial was unfair. There is a preference for joint trials, which avoids the expense of two or more separate trials, and that preference has "special force in the context of a motion to sever properly joined charges." (*Soper*, *supra*, 45 Cal.4th at p. 772.) Defendant concedes that joinder of all five counts was proper, and that none of the charged offenses are particularly inflammatory or inherently prejudicial. Although cross-admissibility of evidence is not required where cases are properly joined (§ 954.1 ["evidence concerning one offense or offenses need not be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact"]), the use of the Volkswagen carjacked from Sarai to commit the assault with a deadly weapon on Covington provides a rational ground for trying the various counts in one proceeding. We do not view the evidence supporting the counts as significantly different in strength.

Each of the complaining witnesses recanted their earlier statements incriminating defendant, and the convictions were based on impeaching evidence.

Not only has defendant failed to show an abuse of discretion in denial of severance, the record contains no hint of resulting gross unfairness in the trial. In response to a jury question, the trial court advised the jurors that it "must decide each count separately. A specific finding on one count does not dictate a similar finding on any of the others." The jury followed this instruction, as shown by the not guilty verdict on the felon in possession of a firearm charge in count 4 and the finding defendant did not use a firearm in the commission of the carjacking in count 3. These verdicts are sufficient proof the trial was not grossly unfair.

## DISPOSITION

The judgment is affirmed.


KRIEGLER, J.


We concur:


MOSK, Acting P. J.


MINK, J.[*]

---

[*] Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.